UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Master File No. 1:23-cv-21060-Williams

| | | |
|---|---|---|
| In re INDEPENDENT LIVING SYSTEMS DATA BREACH LITIGATION | ) ) ) | CLASS ACTION |
| This Document Relates To: | ) ) ) | |
| ALL ACTIONS. | ) ) ) | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ................................................................................................1

II.    SUMMARY OF THE LITIGATION ...............................................................2

III.   SUMMARY OF SETTLEMENT ......................................................................3

       A.    The Settlement Class..............................................................................4

       B.    The Settlement Benefits.........................................................................4

       C.    The Notice and Claims Process .............................................................6

             1.    Settlement Class Notice ................................................................6

             2.    Opt-Out Procedures ......................................................................7

             3.    Objection Procedures ....................................................................7

             4.    Claims Process .............................................................................8

       D.    Attorneys' Fees and Expenses ...............................................................8

IV.    ARGUMENT .....................................................................................................9

       A.    Legal Standards......................................................................................9

       B.    The Proposed Settlement Is Fair, Reasonable, and Adequate .............10

             1.    The Class Was and Continues to Be Adequately Represented..............10

             2.    The Proposed Settlement Was Negotiated at Arm's-Length....................11

             3.    The Settlement Relief Is Fair, Reasonable, and Adequate........................13

                   a.    The Risks, Costs, and Delay of Continued Litigation ..................14

                   b.    The Method of Distributing Relief Is Effective............................15

                   c.    The Terms Relating to Attorneys' Fees and Expenses are
                         Reasonable ..................................................................................16

             4.    Agreements Required to be Identified by Rule 23(e)(3) ..........................17

**Page**

5.  Settlement Class Members are Treated Equitably Relative to Each Other ...................................................................................17

C.  Certification of the Settlement Class Is Appropriate ..............................................18

1.  The Settlement Class Meets the Requirements of Rules 23(a) and (b)(3) .................................................................................19

a.  Numerosity ....................................................................................19

b.  Commonality ................................................................................19

c.  Typicality .....................................................................................20

d.  Adequacy .....................................................................................21

e.  Predominance ..............................................................................22

f.  Superiority ...................................................................................24

D.  The Proposed Class Notice Satisfies Rule 23 .......................................................25

E.  Plaintiffs Should be Appointed as Class Representatives ....................................27

F.  Plaintiffs' Proposed Co-Lead Class Counsel Should be Appointed as Class Counsel ..................................................................................27

V.  CONCLUSION .............................................................................................28

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Agan v. Katzman & Korr, P.A.*,
  222 F.R.D. 692 (S.D. Fla. 2004) ............................................................24

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)....................................................................18, 22, 24

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ................................................... *passim*

*Bussey v. Macon Cnty. Greyhound Park, Inc.*,
  562 F. App'x 782 (11th Cir. 2014) .........................................................25

*Carter v. Vivendi Ticketing US LLC*,
  2023 WL 8153712 (C.D. Cal. Oct. 30, 2023)........................................17

*Cherry v. Domestic Corp.*,
  986 F.3d 1296 (11th Cir. 2021) .............................................................25

*Cooper v. Southern Co.*,
  390 F.3d 695 (11th Cir. 2004) ...............................................................21

*Fabricant v. Sears Roebuck*,
  202 F.R.D. 310 (S.D. Fla. 2001).............................................................18

*Fresco v. Auto Data Direct, Inc.*,
  2007 WL 2330895 (S.D. Fla. May 14, 2007) ...........................................9

*Gonzalez v. TCR Sports Broad. Holding, LLP*,
  2019 WL 2249941 (S.D. Fla. May 24, 2019) ..................................12, 16

*Hapka v. CareCentrix, Inc.*,
  2018 WL 1871449 (D. Kan. Feb. 15, 2018) ...........................................23

*Hashemi v. Bosley, Inc.*,
  2022 WL 2155117 (C.D. Cal. Feb. 22, 2022)........................................17

*Heath v. Ins. Techs. Corp.*,
  No. 3:21-cv-01444-N (N.D. Tex. Jan. 4, 2023), ECF 52.......................14

*Hines v. Widnall*,
  334 F.3d 1253 (11th Cir. 2003) .............................................................20

**Page**

*Ibrahim v. Acosta,*
   326 F.R.D. 696 (S.D. Fla. 2018) ........................................................................10

*In re Anthem, Inc. Data Breach Litig.,*
   327 F.R.D. 299 (N.D. Cal. 2018) ...............................................................13, 23

*In re Brinker Data Incident Litig.,*
   2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ....................................................20, 21

*In re Checking Acct. Overdraft Litig.,*
   275 F.R.D. 654 (S.D. Fla. 2011) ..............................................................11, 19

*In re Checking Acct. Overdraft Litig.,*
   286 F.R.D. 645 (S.D. Fla. 2012) ........................................................................24

*In re Equifax Inc. Customer Data Sec. Breach Litig.,*
   2020 WL 256132 (N.D. Ga. Mar. 17, 2020), *aff'd in part, rev'd in part on other grounds,*
   999 F.d 1247 (11th Cir. 2021) ........................................................................13

*In re Home Depot, Inc., Customer Data Sec. Breach Litig.,*
   2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ......................................................23

*In Re Lincare Holdings Inc. Data Breach Litig.,*
   No. 8:22-cv-1472-TPB-AAS (M.D. Fla. June 24, 2024), ECF 126 ...........................14

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.,*
   No. 21-MD-02994-RAR (S.D. Fla. Oct. 5, 2024), ECF 328 ...................................14

*In re Premera Blue Cross Customer Data Sec. Breach Litig.,*
   2019 WL 3410382 (D. Or. July 29, 2019) ........................................................13

*In re Sonic Corp.,*
   2021 WL 6694843 (6th Cir. Aug. 24, 2021) ......................................................21

*In re U.S. Oil & Gas Litig.,*
   967 F.2d 489 (11th Cir. 1992) .....................................................................10, 15

*Ingram v. Coca-Cola. Co.,*
   200 F.R.D. 685 (N.D. Ga. 2001) ........................................................................22

*Karhu v. Vital Pharms., Inc.,*
   621 F. App'x 945 (11th Cir. 2015) .....................................................................25

- iv -

**Page**

*Kennedy v. Tallant*,
    710 F.2d 711 (11th Cir. 1983) ...........................................................................21

*Kornberg v. Carnival Cruise Lines, Inc.*,
    741 F.2d 1332 (11th Cir. 1984) ........................................................................21

*Leszczynski v. Allianz Ins.*,
    176 F.R.D. 659 (S.D. Fla. 1997) ......................................................................19

*Lipuma v. Am. Express Co.*,
    406 F. Supp. 2d 1298 (S.D. Fla. 2005) .......................................................12, 18

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
    289 F.R.D. 674 (S.D. Fla. 2013)........................................................................19

*Nelson v. Mead Johnson & Johnson Co.*,
    484 F. App'x 429 (11th Cir. 2012) ...................................................................14

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) .............................................................11

*Poertner v. Gillette Co.*,
    618 F. App'x 624 (11th Cir. 2015) ...................................................................11

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
    297 F.R.D. 683 (S.D. Fla. 2014).......................................................................12

*Savidge v. Pharm-Save, Inc.*,
    727 F. Supp. 3d 661 (W.D. Ky. 2024).................................................20, 21, 23

*Sherwood v. Horizon Actuarial*,
    No. 1:22-cv-01495-ELR (N.D. Ga. Apr. 2, 2024), ECF 94.............................14

*Sikes v. Teleline, Inc.*,
    281 F.3d 1350 (11th Cir. 2002) ........................................................................24

*Turner v. Gen. Elec. Co.*,
    2006 WL 2620275 (M.D. Fla. Sept. 13, 2006).................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).........................................................................................22

**Page**

*Walco Invs., Inc. v. Thenen*,
    168 F.R.D. 315 (S.D. Fla. 1996) ......................................................19

*Williams v. Mohawk Indus., Inc.*,
    568 F.3d 1350 (11th Cir. 2009) .....................................................19

*Wilson v. EverBank*,
    2016 WL 457011 (S.D. Fla. Feb. 3, 2016) ...................................15

*Wolff v. Cash 4 Titles*,
    2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) .............................16

**STATUTES, RULES, AND REGULATIONS**

California Civ. Code
    §56 .................................................................................................17
    §1798.100 ......................................................................................17

Federal Rules of Civil Procedure
    Rule 23 ..........................................................................................25, 26
    Rule 23(a) ...................................................................................... *passim*
    Rule 23(b) ......................................................................18, 19, 22, 24, 25
    Rule 23(c)(2)(B) ............................................................................25, 26
    Rule 23(e) ...................................................................................... *passim*
    Rule 23(g)(1)(A) ...........................................................................27

**SECONDARY AUTHORITIES**

Theodore Eisenberg, *et al.*, *Attorneys' Fees in Class Actions: 2009-201*,
    92 N.Y.U. L. Rev. 937, 951 (2017) ..............................................16

*Manual for Complex Litigation (Third)* (1995) ...................................11, 26

William B. Rubenstein, *Newberg on Class Actions* (6th ed. 2024).....................9, 21, 22

Plaintiffs, David Asato, Katrina Berres, Ge Xiao Fang, Melinda Geleng, Mathew George, Maria Gomez, Dimitri Gutierrez, Chelsea Jensen, Rhianna McMullen, David Perez, Mark Salzano, Ernest Scoggan, and Ryan Smith ("Plaintiffs" or "Class Representatives") respectfully move for preliminary approval of the Class Action Settlement Agreement[1] they reached with Defendant Independent Living Systems LLC ("ILS" or "Defendant") (collectively, "the Settling Parties") and to direct notice of the proposed Settlement to the Settlement Class (defined below), pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. The Settling Parties have reached a proposed settlement that, if the Court approves, will resolve the Plaintiffs' and Settlement Class Members' claims against Defendant arising from the Data Security Incident (defined below) at issue in this Litigation. In support of this Motion, Plaintiffs submit herewith the Settlement Agreement and the Joint Declaration of Proposed Co-Lead Class Counsel as **Exhibit 2**.

## I.    INTRODUCTION

This class action arises from the Data Security Incident that Plaintiffs allege compromised the security of their and other Settlement Class Members' Sensitive Information, including, but not limited to, PII and PHI Defendant acquired from current and former patients, clients, and other persons during the ordinary course of its business, and which Plaintiffs allege Defendant was duty-bound to protect from unauthorized persons, including cyber criminals. The Sensitive Information affected by the Data Security Incident included a wide variety of information, including name, Social Security number, taxpayer identification numbers, medical or health insurance information, and other sensitive information, which in the hands of cyber criminals can result in identity theft.

---

[1]    Unless defined, capitalized terms have the same meaning attributed to them in the Class Action Settlement Agreement ("Settlement Agreement" or "SA"), attached hereto as **Exhibit 1**.

## II.   SUMMARY OF THE LITIGATION

On or around on July 5, 2022, Defendant became aware of a malicious third-party who accessed and acquired files on Defendant's computer network, and who made certain files inaccessible to Defendant (*i.e.*, the "Data Security Incident") and compromised certain Sensitive Information belonging to impacted individuals. Defendant notified impacted individuals of the Data Security Incident on or around March 14, 2023. On March 17, 2023, the first class action lawsuit was filed against Defendant, following which several other actions were filed against Defendant in quick succession, each arising out of the Data Security Incident (collectively, the "Civil Actions"). On July 31, 2023, the Civil Actions were consolidated before the Honorable United States District Judge Kathleen M. Williams and United States Magistrate Judge Lisette M. Reid in the United States District Court for the Southern District of Florida under a single civil action number. On November 13, 2023, Plaintiffs filed their operative Complaint on behalf of a putative Nationwide Class. *See* ECF 44.

Defendant moved to dismiss the Complaint on December 13, 2023 (ECF 48), which Plaintiffs opposed. *See* ECF 53. On May 14, 2024, Defendant moved to stay discovery pending resolution of its motion to dismiss. *See* ECF 64. Plaintiffs opposed a stay of discovery (ECF 65), and the Court denied Defendant's motion on June 17, 2024. *See* ECF 67.

Between April 2024 and September 2024, the Settling Parties engaged in significant discovery including, but not limited to, Plaintiffs serving Defendant with three sets of requests for production of documents and one set of interrogatories, Plaintiffs serving nine separate subpoenas on third-parties involved in Defendant's data security or the Data Security Incident, and Defendant serving document requests and interrogatories on all Plaintiffs.

On September 10, 2024, the Settling Parties jointly moved the Court to stay the Litigation pending the Settling Parties' November 6, 2024 mediation before Mr. Seth Aronson of Phillips ADR – a highly respected mediator with substantial experience with data privacy class actions. *See* ECF 77. The Court granted the Settling Parties' motion. *See* ECF 78.

On November 6, 2024, the Settling Parties held an arm's-length, all-day mediation with Mr. Aronson. Although the Settling Parties made progress, no resolution was reached. However, the Settling Parties agreed that another effort to resolve the case through mediation was appropriate, and jointly requested the Court continue the stay pending further mediation efforts. *See* ECF 81.

On December 11, 2024, the Settling Parties then engaged in their second attempt at mediation, which was another full-day mediation session conducted by Mr. Aronson. Over the course of the day, the Settling Parties engaged in arm's-length, hard-fought negotiations, which ultimately led to agreements to the mediator's proposal. The Settling Parties reached an agreement in principle on December 18, 2024, the terms of which were later finalized by way of the Settlement Agreement and its attached exhibits.

The Settlement Agreement was executed, subject to preliminary and final approval by the Court.

## III.      SUMMARY OF SETTLEMENT

The Settlement Agreement negotiated on behalf of the Settlement Class provides for the Settlement Amount of Fourteen Million Dollars ($14,000,000.00) ("Settlement Amount") to be paid by wire transfer, along with any accrued interest, into the Settlement Fund. SA ¶¶1.38, 2.1. The Settlement Fund is non-reversionary. The Settlement Agreement provides that the Settlement Fund shall be the sole source of monetary funds for the payment of Settlement Benefits to

Settlement Class Members as follows: (i) Pro Rata Cash Payments from Net Settlement Fund; and (ii) reimbursement for Out-of-Pocket losses up to $5,000. SA ¶¶3.1-3.7. Any Residual Funds shall be distributed to the Alzheimer's Association, a non-profit, cy pres recipient. SA ¶3.8.

### A.     The Settlement Class

The Settlement Class is defined as "all persons residing in the United States whose personal information was exposed in the Data Breach at ILS." SA ¶1.39. The Settlement Class consists of approximately 3.9 million individuals. *Id.*

### B.     The Settlement Benefits

1.     **Out-of-Pocket Loss Claims**. Settlement Class Members may claim reimbursement up to a maximum amount of $5,000 for documented Out-of-Pocket Losses, that more likely than not resulted from the Data Security Incident, subject to review and discretion of the Settlement Administrator. SA ¶3.3. Claims for approved Out-of-Pocket Loss Claims shall be paid prior to determining the amount of Cash Payments mentioned below, in paragraph 2. *Id.* ¶3.3. No Settlement Class Member may have more than one Approved Claim. *Id.* ¶3.4. For any payments returned to the Settlement Administrator as undeliverable or for reissue of payments to the estate of a deceased Settlement Class Member, the Settlement Administrator shall follow the detailed process laid out in the Settlement Agreement. *Id.* ¶3.6-3.7.

2.     **Pro Rata Cash Payment Claims**. All Settlement Class Members who submit an Approved Claim, may request one form of Cash Payment (either California Cash Payment or Pro Rata Cash Payment) (the "Cash Payment") after they submit their Claim Form to the Settlement Administrator by the deadline. SA ¶3.2. One Cash Payment will be issued per Approved Claim and will be paid from the Net Settlement Fund. *Id.*

(a)     California Cash Compensation (California Cash Payment): After the payment for Out-of-Pocket Loss Claims, the Settlement Administrator will issue California Cash Payments from the remaining Net Settlement Fund, consisting of two pro rata shares (2x) of the Remaining Fund for each Settlement Class Member residing in California at the time of the Data Security Incident. *Id.* Settlement Class Members claiming the California Cash Payment must attest that they resided in California on June 30, 2022. *Id.* For the avoidance of doubt, the intention of awarding two pro rata shares to those validly claiming the California Cash Payments is to provide those approved claimants with double the amount of the Pro Rata Cash Payment, in recognition of the potential value of the California statutory claims alleged in this Litigation. *Id.*

(b)     Cash Compensation (Pro Rata Cash Payment): After the payment of Out-of-Pocket Loss Claims, the Settlement Administrator will issue Pro Rata Cash Payments of a single pro rata share of the remaining Net Settlement Fund for each Settlement Class Member who did not reside in California at the time of the Data Security Incident. *Id.*

3.     **Residual Funds**. If any monies remain in the Net Settlement Fund (due to returned or uncashed checks or otherwise) more than one hundred twenty (120) calendar days after the distribution of Settlement Payments described above, and it is not economically feasible to distribute the residual funds to class members who have filed claims and whose claims have been allowed, then the Settling Parties will distribute the residual funds to cy pres recipient the Alzheimer's Association. SA ¶3.8.

4.     **Business Practices Changes**. Defendant represented that, since the Data Security Incident and in part as a result of the Litigation, it implemented certain Business Practice Changes that resulted in a new incremental spend of more than $2 million. SA ¶3.9. In addition, Defendant represents that, in part as a result of the Litigation, it maintained those Business Practice Changes.

*Id.* As part of the Settlement, Defendant will prepare for Co-Lead Class Counsel a confidential statement subject to the protective order in the Litigation that outlines the Business Practice Changes already implemented, which can be submitted to the Court, in camera, if required. *Id.*

5.      **Release.** As set forth in more detail in the Settlement Agreement, upon the date the Judgment becomes Final, each Settlement Class Member, including Class Representatives, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against all Released Persons. SA ¶9.1. Further, upon the date the Judgment becomes Final, and to the fullest extent permitted by law, each Settlement Class Member, including Class Representatives, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims is asserted. *Id.* Defendant shall release and discharge Settlement Class Members, Plaintiffs, and Class Counsel from any claims that arise out of or relate in any way to the institution, prosecution, or settlement of the Litigation, except for claims relating to the enforcement of the Settlement, and for the submission of false or fraudulent claims for settlement benefits. *Id.*

C.      **The Notice and Claims Process**

1.      **Settlement Class Notice**

The Settlement Administrator shall be responsible for implementing and executing the Notice Plan. Within seven calendar days after the entry of the Preliminary Approval Order, Defendant shall provide to the Settlement Administrator a list of the Settlement Class Members that includes full names, current addresses (to the extent available), and email addresses (to the

extent available) as reflected in Defendant's records. SA ¶6.1. Within thirty (30) calendar days after the Preliminary Approval Order is entered, the Settlement Administrator shall commence mailing via first-class U.S. mail or emailing to all Settlement Class Members for whom mailing addresses or email addresses are available, the Short Notice, and shall commence notice through a media campaign expected to reach approximately 88% of Settlement Class Members. *Id*. Any Settlement Class Member that does not file a timely and adequate objection as per the process laid out in the Settlement Agreement, waives the right to object or to be heard at the Final Approval Hearing and shall be forever barred from making any objection to the Settlement, unless otherwise ordered by the Court. SA ¶6.2.

### 2.     Opt-Out Procedures

Each Person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated postal address established by the Settlement Administrator. SA ¶7.1. The written notice must clearly manifest a Person's intent to be excluded from the Settlement Class and this shall be determined by the Settlement Administrator. *Id*. Defendant may, in its sole discretion, terminate the Agreement if more than a specified number of Settlement Class Members submit valid and timely requests to exclude themselves from the Settlement, as agreed to by the Settling Parties in a separate writing that has been executed by them contemporaneously with the execution of the Agreement, and, if requested, submitted to the Court for in camera review. SA ¶7.4.

### 3.     Objection Procedures

Each Settlement Class Member desiring to object to the Settlement Agreement or Class Counsel's Fee Application shall submit a timely written notice of his or her objection. SA ¶8.1. To be timely, written notice of an objection in the appropriate form must be sent to the Settlement

Administrator and received or postmarked no later than thirty (30) calendar days before the Claims Deadline, unless otherwise ordered by the Court. *Id.* Except upon a showing of good cause, or as otherwise allowed by the Court, any Settlement Class Member who fails to comply with the requirements for objecting shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the Litigation. SA ¶8.2. A Settlement Class Member who files an objection waives the right to opt-out, and vice versa. SA ¶8.4.

### 4. Claims Process

The timing of the claims process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, make a claim or decide whether they would like to opt-out or object. SA ¶4. Settlement Class Members with Approved Claims shall be able to select from a variety of payment options, including Zelle, PayPal, Venmo, ACH, virtual pre-paid Mastercard, and/or paper check. *Id*. The Claim Form, attached to the Settlement Agreement as Exhibit A, is written in plain language to facilitate Settlement Class Members' ease in completing it. *Id.*

### D. Attorneys' Fees and Expenses

Proposed Co-Lead Class Counsel shall submit a request to the Court for an award of reasonable attorneys' fees, expressed as a percentage of the Settlement Amount, and for an award of Plaintiffs' counsel's reasonable expenses and charges incurred in prosecuting and settling the Litigation. SA ¶10.1. If approved by the Court, such attorneys' fees and expenses will be paid by the Settlement Administrator from the Escrow Account at least ten calendar days after Defendant completes full payment of the Settlement Amount. SA ¶10.2.

**IV.    ARGUMENT**

**A.    Legal Standards**[2]

Approval of a proposed settlement is a two-step process. ***First***, the court decides whether the proposed settlement is "within the range of possible approval," *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007) (cleaned up),[3] to decide "whether to direct notice . . . to the class, invite the class's reaction, and schedule a final fairness hearing." 4 William B. Rubenstein, *Newberg on Class Actions* §13:10 (6th ed. 2024). ***Second***, at the final approval hearing, the court decides if the settlement is fair, reasonable, and adequate. *Id*.

Under Rule 23(e)(1), the Court may direct notice to the class of a class action settlement upon determining that notice is justified because the Court concludes it is "more likely than not" to finally approve the settlement and certify a settlement class. *See* Fed. R. Civ. P. 23(e)(1)(B). Before finally approving a settlement, a court should consider whether (1) the class was adequately represented; (2) the settlement was negotiated at arm's-length; (3) the relief is adequate, taking into account the costs, risks, and delay of trial and appeal; how the relief will be distributed; the terms governing attorneys' fees; and any side agreements; and (4) whether settlement class members are treated equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A-D).

In assessing whether a settlement is fair, reasonable, and adequate, courts in this Circuit may also consider the so-called *Bennett* factors, which include: (1) the likelihood of success at

---

[2]    In addition to its substantive review of the Settlement's terms, the Court must have subject matter jurisdiction over this case. CAFA's jurisdictional requirements are easily met here (minimal diversity, an amount in controversy exceeding $5,000,000, and more than 100 putative class members). Moreover, CAFA's home-state controversy exception does not apply because, based on available address information, less than one-third of the Settlement Class has a Florida address.

[3]    Unless otherwise noted, all emphasis is added and citations are omitted.

trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984). In weighing these factors, the court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Id*.

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice." *Turner v. Gen. Elec. Co*., 2006 WL 2620275, at \*2 (M.D. Fla. Sept. 13, 2006) (cleaned up). Additionally, it has long been held that "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig*., 967 F.2d 489, 493 (11th Cir. 1992).

**B.     The Proposed Settlement Is Fair, Reasonable, and Adequate**

**1.     The Class Was and Continues to Be Adequately Represented**

Adequacy of representation is an issue traditionally considered in connection with class certification and involves two questions: "(1) whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation" and "(2) whether plaintiffs have interests antagonistic to those of the rest of the class." *Ibrahim v. Acosta*, 326 F.R.D. 696, 701 (S.D. Fla. 2018) (cleaned up). Here, Plaintiffs have the same interests as other Settlement Class Members as they are asserting the same claims and share the same alleged injuries stemming from the Data Security Incident. Further, the record shows Proposed Co-Lead Class Counsel worked diligently to litigate the case and eventually bring this case to resolution through two

- 10 -

formal mediations. Joint Decl., ¶¶1-7. The Settling Parties ultimately came to an agreement in principle after the second mediation session, which was an arm's-length, full-day mediation session conducted by Seth Aronson, Esq. of Phillips ADR. *Id.*, ¶7.

### 2.    The Proposed Settlement Was Negotiated at Arm's-Length

The Settlement resulted from arm's-length negotiations between experienced Proposed Co-Lead Class Counsel with an understanding of the strengths and weaknesses of their respective positions in this lawsuit, assisted by Mr. Aronson. Joint Decl., ¶¶6-7. These circumstances weigh in favor of approval. *See, e.g.*, *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) (concluding that a settlement achieved only after engaging in extensive arm's-length negotiations moderated by an experienced mediator belies any suggestion of collusion); *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) (approving settlement where it "was reached in the absence of collusion, is the product of informed, good-faith, arms'-length negotiations between the parties and their capable and experienced counsel, and was reached with the assistance of a well-qualified and experienced mediator"); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"); *see also Manual for Complex Litig. (Third)* §30.42 (1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").

Additionally, the Settling Parties spent significant time negotiating the terms of the final written Settlement Agreement that is now presented to the Court for approval. At all times, these negotiations were at arm's-length. While courteous and professional, the negotiations were intense and hard-fought on all sides. *See* Joint Decl., ¶¶6-7.

Overlapping with this Rule 23(e)(2) factor is the sixth *Bennett* factor, the stage of the proceedings at which a settlement is achieved and "is evaluated to ensure that [p]laintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma v. Am. Express Co*., 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005). In addition, while "[e]arly settlements are favored" such that "vast formal discovery need not be taken," *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (cleaned up), here, the Settling Parties engaged in significant document discovery to understand the strengths and weaknesses in the Litigation.

The Settling Parties settled before depositions were taken, and, thus at relatively early in the Litigation; however, the Settling Parties not only engaged in formal document discovery prior to mediation, they participated in informal pre-mediation discovery as well. Thus, the Settling Parties had sufficient information to adequately evaluate the merits of the case. Among the information shared through formal and pre-mediation discovery was class size and demographics, information regarding the technical aspects of the Data Security Incident, and Defendants' liability and security enhancements. Additionally, Proposed Co-Lead Class Counsel relied on their experience presenting expert evidence and litigating the key legal issues in other major data breach cases to assist in evaluating the merits of this case. Joint Decl., ¶¶21-24. As recognized in other cases, "[i]nformation obtained from other cases may be used to assist in evaluating the merits of a proposed settlement of a different case." *Lipuma*, 406 F. Supp. 2d at 1325. Accordingly, Plaintiffs had more than sufficient information available to weigh the benefits of Settlement against further Litigation. *See, e.g.*, *Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941, at *5 (S.D. Fla. May 24, 2019) ("the early settlement reached between the parties and the extent to which the

parties were informed about the merits of their claims and defenses weighs in favor of approving the Settlement Agreement.").

### 3. The Settlement Relief Is Fair, Reasonable, and Adequate

The next Rule 23(e)(2) factor considers the relief offered in the context of the costs, risks, and delay of further litigation. This factor overlaps with the first four *Bennett* factors identified above.

In terms of relief offered, the Settlement is as comprehensive as nearly any other data breach settlement on record, and the specific benefits compare favorably to what has been previously approved by federal district courts and affirmed by circuit courts of appeal, including a sizeable, $5,000 cap on reimbursement for Out-of-Pocket Losses; Pro Rata Cash Payments to residents of California and to those residents outside of California; disbursement of Residual Funds to a cy pres fund and Defendant's commitment to make meaningful Business Practice Changes. For example, the relief made available under the Settlement compares very favorably to the relief made available to victims of large data breaches in common fund cases that have previously received approval and provides for a significantly greater recovery on a per-person basis. *See, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *2 (N.D. Ga. Mar. 17, 2020), *aff'd in part, rev'd in part on other grounds*, 999 F.d 1247 (11th Cir. 2021) (describing settlement benefits made available from $380.5 million fund on behalf of 147 million class members); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 2019 WL 3410382, at *23-24 (D. Or. July 29, 2019) (describing settlement benefits made available from $32 million fund on behalf of 11 million class members); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) (approving $115 million settlement on behalf of more than 79 million class members). The Settlement Fund also compares favorably to the relief approved in data breach

cases with classes more similar in size to this one. *See, e.g.*, *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR (S.D. Fla. Oct. 5, 2024), ECF 328 (Ruiz, J.) (approving $6 million settlement on behalf of 2,712,790 class members); *In Re Lincare Holdings Inc. Data Breach Litig.*, No. 8:22-cv-1472-TPB-AAS (M.D. Fla. June 24, 2024), ECF 126 (finally approving $7,250,000 settlement on behalf of 2.9 million class members); *Sherwood v. Horizon Actuarial*, No. 1:22-cv-01495-ELR (N.D. Ga. Apr. 2, 2024), ECF 94 (finally approving at $8,733.446 common fund settlement for 4,386,969 class members); *Heath v. Ins. Techs. Corp.*, No. 3:21-cv-01444-N (N.D. Tex. Jan. 4, 2023), ECF 52 ($11,000,000 common fund settlement for 4.6 million class members finally approved).

Proposed Co-Lead Class Counsel, a group with extensive experience in leading major data breach class actions, believe that the relief is fair, reasonable, adequate, and superior to many comparable settlements on record. *See* Joint Decl., ¶¶21-24. The Court may rely upon such experienced counsel's judgment in assessing the fairness of the Settlement. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.") (cleaned up).

### a.      The Risks, Costs, and Delay of Continued Litigation

While Plaintiffs are confident in the merits of their claims, they also understand that Defendant will assert a number of potentially case-dispositive defenses and are pragmatic in their awareness of the various defenses available to Defendant, as well as the risks inherent to continued litigation. Defendant has consistently denied the allegations raised by the Plaintiffs and made clear at the outset that they would vigorously defend the case (as evidenced by the motion to dismiss,

ECF 48). The Settlement Agreement avoids these uncertainties and provides the Settlement Class with meaningful and certain relief.

Due at least in part to their cutting-edge nature and the rapidly evolving law, class actions can involve some level of risk, expense, and complexity, which is one reason that judicial policy so strongly favors resolving class actions through settlement. *See In re U.S. Oil & Gas Litig.*, 967 F.2d at 493. Should this litigation continue, class certification is a significant hurdle that introduces additional complexities, including the potential for denial of certification. *See, e.g.*, *Wilson v. EverBank*, 2016 WL 457011, at *8 (S.D. Fla. Feb. 3, 2016) (Bloom, J.) ("Plaintiffs might have recovered nothing for themselves or the class had they proceeded with litigation. Plaintiffs would have faced motions for class certification and for summary judgment, and possibly a lengthy trial and an appeal. Claims based on similar facts and the same or legal theories as those advanced here have met with mixed results in courts across the country, on both dispositive motions and class certification."). A settlement today not only avoids the risks of continued litigation, but it also eliminates the risk that the Court would not certify the class or certification might not be upheld on appeal, and it also provides benefits to Settlement Class Members of the type designed to address the common repercussions which arise following a data breach.

Thus, the costs and risks of trial and appeal support a finding that this Court will likely approve the Settlement.

### b.      The Method of Distributing Relief Is Effective

The settlement distribution process, developed with Proposed Co-Lead Class Counsel's knowledge and experience overseeing the administration of dozens of data breach settlements, will be efficient and effective. Settlement Class Members can easily file claims for Out-of-Pocket

Losses and Pro Rata Cash Payments by submitting the straightforward Claim Form. SA ¶¶3.2-3.3. Documentation requirements are not onerous and are only required for Out-of-Pocket Losses. *Id.*

**c.    The Terms Relating to Attorneys' Fees and Expenses are Reasonable**

Proposed Co-Lead Class Counsel will separately move for attorneys' fees and expenses and seek no more than one-third (1/3) of the Settlement Amount as attorneys' fees. SA ¶10.1. In addition, Proposed Co-Lead Class Counsel will seek an award of their litigation expenses and charges. *Id.* The fees and expenses shall be paid from the Escrow Account at least ten (10) calendar days after Defendant completes full payment of the Settlement Amount. SA ¶10.2. "Although there is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee, an award of one-third of the common fund is consistent with the trend in this Circuit." *Gonzalez*, 2019 WL 2249941, at *6 (cleaned up) (citing cases); *see also Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third"); Theodore Eisenberg, *et al.*, *Attorneys' Fees in Class Actions: 2009-201*, 92 N.Y.U. L. REV. 937, 951 (2017) (empirical study showing the median award in the 11th Circuit is 33%).

While Proposed Co-Lead Class Counsel will provide a more thorough analysis of the reasonableness of its forthcoming motion for attorneys' fees and expenses, at this stage, the Court can conclude that it is likely to approve the Settlement for purposes of sending notice to the class, even if it has not yet made a final determination as to Attorneys' Fees and Expenses, where the fees to be sought fall within the range of fees previously approved by courts in the Eleventh Circuit, including this Court.

### 4.      Agreements Required to be Identified by Rule 23(e)(3)

Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." There is no agreement between the Settling Parties, except as set forth in the Settlement Agreement, including (but not limited to) the separate writing referenced in Paragraph 7.4 of the Settlement Agreement, which the Parties are prepared to submit to the Court for an *in camera* review.

### 5.      Settlement Class Members are Treated Equitably Relative to Each Other

The last requirement under Rule 23(e) is that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats all Settlement Class Members equitably relative to one another because all are eligible to receive reimbursement based on Out-of-Pocket losses and Pro Rata Cash Payments. Joint Decl., ¶¶7-11. More specifically, all California Settlement Class members, whose claims are of higher value that non-California Settlement Class members due to the availability of statutory damages under the California Consumer Privacy Act, Cal. Civ. Code §1798.100, *et seq.*, and California's Confidentiality of Medical Information Act, Cal. Civ. Code §56, *et seq.*, are eligible for the same 2x pro rata share from the Settlement Fund, while all non-California Settlement Class members are entitled to the same 1x pro rata share from the Settlement Fund. *See, e.g.*, *Carter v. Vivendi Ticketing US LLC*, 2023 WL 8153712, at *11 (C.D. Cal. Oct. 30, 2023) (granting final approval in data breach settlement and noting, "[t]he Settlement also treats California sub-class members differently than class members from other states based on their claims that provide for statutory damages. This distinction is also reasonable. The release is also the same for all class members. The Court finds that the Settlement treats class members equitably."); *Hashemi v. Bosley, Inc.*,

- 17 -

2022 WL 2155117, at *6 (C.D. Cal. Feb. 22, 2022) (granting preliminary approval in data breach settlement where California class members received extra payment for statutory claims).

*     *     *

Accordingly, the Settlement satisfies each of the Rule 23(e)(2) and *Bennett* factors[4] and is fair, reasonable, and adequate.

### C.     Certification of the Settlement Class Is Appropriate

The second requirement in Rule 23(e)(1) for issuance of notice to the class is a finding that the Court will "likely be able to . . . certify the class for purposes of judgment" on the proposed settlement. Fed. R. Civ. P. 23(e)(1), advisory committee note.  Here, the Settlement Class meets the requirements for certification under Rule 23(b)(3), so the Court should conclude that issuing notice is justified.

"A class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Lipuma*, 406 F. Supp. 2d at 1313-14 (cleaned up). Class certification is proper if the proposed class, proposed class representatives, and class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P 23(a)(1)–(4); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Additionally, where (as in this case) certification is sought under Rule 23(b)(3), Plaintiffs must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615-16 (1997). District

---

[4]   The fifth *Bennett* factor, the substance and amount of opposition to the Settlement, is inapplicable at this stage as notice of the Settlement, informing the Settlement Class of the opportunity to object, has not yet issued. This factor will be addressed at the final approval stage.

- 18 -

courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

Because this case meets all of the requirements of Rule 23(a) and (b)(3), as set forth below, certification is appropriate.

### 1. The Settlement Class Meets the Requirements of Rules 23(a) and (b)(3)

#### a. Numerosity

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' [Fed. R. Civ. P.] 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013). Courts require only that plaintiffs provide "some evidence of the number of members in the purported class, or at least a reasonable estimate of that number." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997). Here, Defendant identified approximately 3.9 million individuals affected by the Data Security Incident. Numerosity is thus easily satisfied.

#### b. Commonality

"The threshold for commonality under Rule 23(a)(2) is not high." *In re Checking*, 275 F.R.D. at 659. "[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (cleaned up).

Here, the commonality requirement of Rule 23(a)(2) is readily satisfied because Settlement Class Members are joined by the common questions of law and fact that arise from the same event — the Data Security Incident. As Plaintiffs allege, the critical issues posed by this action include:

(1) whether and to what extent Defendant had a duty to protect and safeguard the Sensitive Information of Plaintiffs and the Settlement Class Members; (2) whether Defendant breached that duty to Plaintiffs and the Settlement Class Members by failing to implement and maintain data security procedures and practices commensurate with the nature and scope of the Sensitive Information compromised in the Data Security Incident; (3) whether Plaintiffs and Class Members are injured as a result of the Data Security Incident and entitled to damages and/or injunctive relief. ECF 44 ¶383.

These common issues aggregate toward the singular conduct of Defendant with respect to the Data Security Incident. *See, e.g.*, *Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661, 698 (W.D. Ky. 2024) ("there exist common questions of whether Pharm-Save's conduct was negligent or a contractual breach and whether it caused a data security breach that resulted in theft of employees' data and reasonably prompted employees to take mitigation measures or expend time to deal with the fallout of the breach. These questions all arise from the 2016 data breach.") (cleaned up); *In re Brinker Data Incident Litig.*, 2021 WL 1405508, at *8 (M.D. Fla. Apr. 14, 2021) (finding "several questions that are common to the class and capable of classwide resolution, including whether Brinker had a duty to protect customer data, whether Brinker knew or should have known its data systems were susceptible, and whether Brinker failed to implement adequate data security measures to protect customers' data. . . . In particular, the final question is common to every claim in both the proposed Nationwide Class and the proposed California Statewide Class.").

### c.    Typicality

The next prerequisite to certification, typicality, "measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(3). A class representative's

claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. Southern Co*., 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative class members do not defeat certification.") (cleaned up). Simply put, when the same course of conduct is directed at both the named plaintiffs and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Typicality is met here. Plaintiffs' and Settlement Class Members' claims all arise from Defendant's alleged failure to properly protect their Sensitive Information. Both Plaintiffs and Settlement Class Members allege to have been injured in the same way – by the disclosure of their PII and PHI. This satisfies the typicality requirement. *See, e.g.*, *Savidge*, 727 F. Supp. 3d at 700 (noting that, "in several data breach cases, courts have found the typicality requirement satisfied.") (citing *In re Sonic Corp.*, 2021 WL 6694843, at *3 (6th Cir. Aug. 24, 2021) (noting that the alleged elements of the negligence claim "all arise from common questions," despite individual damages questions)); *Brinker*, 2021 WL 1405508, at *8 (finding typicality met where "all Plaintiffs' injuries arise out of the same series of events, the Data Breach[,]" "all allege the same claims . . . , and like each other class member they must show that Brinker was negligent . . . and that Brinker's conduct caused their damages, which are alleged to be similar. Because the only difference between Named Plaintiffs and putative class members is the amount of damages, typicality is satisfied.").

### d.   Adequacy

Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 *Newberg on Class Actions* §3:54. Additionally, the

class representatives' counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem*, 521 U.S. at 625–26. As noted above, Plaintiffs are members of the Settlement Class and do not possess any interests antagonistic to the Settlement Class. Joint Decl., ¶32. They each allege they provided their Sensitive Information to Defendant and that they were harmed because of the Data Security Incident. Additionally, Plaintiffs have vigorously prosecuted this case for the benefit of all Settlement Class Members by filing the underlying action, reviewing pleadings, conferring with Proposed Co-Lead Class Counsel, and providing input in crafting and approving the Settlement. *Id.*

In addition, Proposed Co-Lead Class Counsel are qualified to represent the Settlement Class. They have extensive experience in prosecuting data breach cases, having represented data breach victims in numerous cases across the country. Joint Decl., ¶¶21-23. In this case, they have spent considerable time investigating Settlement Class Members' injuries and claims, actively litigating the case through motion practice and formal discovery, and negotiating a well-informed Settlement on behalf of the Settlement Class, after two rounds of mediation. Accordingly, the Rule 23(a) prerequisites have been met.

### e.    Predominance

Rule 23(b)(3)'s predominance requirement focuses primarily on whether a defendant's liability is common enough to be resolved on a class basis, *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-60 (2011), and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623. Common issues of fact and law predominate in a case if they have "a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Ingram v. Coca-Cola. Co*., 200 F.R.D. 685, 699 (N.D. Ga. 2001).

In this case, the key predominating questions are whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting Plaintiffs' and Settlement Class Members' Sensitive Information and whether Defendant breached that duty. The many common questions of fact and law that arise from Defendant's conduct predominate over any individualized issues. Other courts have recognized that these types of common issues arising from a data breach predominate over individualized issues. *See, e.g.*, *Savidge*, 727 F. Supp. 3d at 704 (certifying a negligence and breach of implied contract class in a data breach case and concluding, "questions relating to damages and even causation . . . are not so numerous or complicated as to overwhelm the common questions relating to liability.") (cleaned up); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 312-15 (finding predominance was satisfied because "[p]laintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect [p]laintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over "potential individual issues based on state-law variations"); *Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and CareCentrix's alleged conduct predominate over any individualized issues"); *In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach).

Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to

individual lawsuits. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). Accordingly, the common questions of fact and law that arise from Defendant's conduct predominate over any individualized issues.

### f.     Superiority

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the Settlement Class. To determine if superiority requirements are met for certification of a settlement class, courts consider: (1) the settlement class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; and (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum. *See* Fed. R. Civ. P. 23(b)(3). At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'" *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004) (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)).

Proceeding as a class action in this case is superior to other means of adjudication. There is no indication in this case that any Settlement Class Member wishes to litigate their claims on an individual basis. And with the high cost of litigating a case like this — requiring expert investigation and testimony to prove how and why the data breach occurred — almost certainly swamping individual damages, individualized litigation is impracticable. *See In re Checking Acct. Overdraft Litig.*, 286 F.R.D. 645, 659 (S.D. Fla. 2012) ("The class action fills an essential role

when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability.").

Additionally, this Court is a desirable forum for this Litigation. It is where the cases were filed and the jurisdiction where Defendant has its principal place of business and headquarters. Defendant also regularly conducts substantial business in this District. Accordingly, resolution of this case through a class action settlement in this Court will achieve significant economies for the Settling Parties, the proposed settlement class, and the court, satisfying the superiority requirement. The Court respectfully should certify the Settlement Class, as the superiority requirement, along with all other requirements Rule 23(a) and (b) are satisfied.[5]

### D.   The Proposed Class Notice Satisfies Rule 23

Under Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal." Likewise, in directing notice "to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

---

[5]   One additional class certification requirement is not mentioned in Rule 23, but is implicit in the analysis, and that is that Plaintiffs must demonstrate that the class is "adequately defined and clearly ascertainable." *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014). This requirement asks (a) whether members of the proposed class "can be ascertained by reference to objective criteria"; and (b) whether analysis of that objective criteria is "administratively feasible," such that "identifying class members [would be] a manageable process that does not require much, if any, individual inquiry." *Id.* (cleaned up); *see also Cherry v. Domestic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021) (a class is ascertainable "if it is adequately defined such that its membership is capable of determination."). Plaintiffs can rely on a defendant's records, but the records should be "useful for identification purposes" and identification should be "administratively feasible." *Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 948 (11th Cir. 2015). Here, the Settlement Class is defined as those individuals whose PII or PHI was impacted in the Data Breach at ILS, which is easily defined and ascertained through ILS's own records.

The Notice Plan satisfies the requirements of Rule 23 and due process and is designed to be the best practicable and to meet all the criteria set forth by the *Manual for Complex Litigation*. Here, Short Notice by direct U.S. Mail or email (the "Short Notice"), will be mailed or emailed to Settlement Class Members for whom mailing or email addresses are available. *See* Joint Decl., Ex. A (Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC in Connection with Preliminary Approval of Settlement) ("Fenwick Decl."), ¶¶7-15 Additionally, for those Settlement Class Members for whom a mailing or email address is not available, the Settlement Administrator will conduct a media campaign to reach at least 88% of the Settlement Class. *Id.*, ¶¶16-18.

A customary long form notice with more detail will also be provided on the settlement website ("Long Notice"). SA ¶5.2. Additionally, the Settlement Administrator will establish and maintain a dedicated settlement website that will be updated throughout the claims period with the Long Notice and Claim Form approved by the Court, as well as the Settlement Agreement. *Id.* A toll-free help line, post office box, and e-mail address will be maintained where Settlement Class Members may submit hard copy Claim Forms, exclusion requests, objections and other case correspondence from Settlement Class Members. *See* Fenwick Decl., ¶¶25-27.

The notices are clear and straightforward. They define the Settlement Class; clearly describe the options available to Settlement Class Members and the deadlines for taking action; describe the essential terms of the settlement and apprise the Settlement Class of the pendency of the case; the terms of the Settlement; Proposed Co-Lead Class Counsel's request for an award of attorney's fees, costs, and expenses; Settlement Class Members' rights to opt-out of or object to the Settlement; describe the date, time, and place of the Final Fairness Hearing; and prominently display the address and phone number of Proposed Co-Lead Class Counsel. Thus, the notices satisfy the specific requirements of Federal Rule of Civil Procedure 23(c)(2)(B), sufficiently

informing Settlement Class Members of the terms of the proposed Settlement and their available options and are the best notices that are practicable under the circumstances.

### E.   Plaintiffs Should be Appointed as Class Representatives

The Court should also preliminarily appoint Plaintiffs as Class Representatives. All Plaintiffs diligently advocated on behalf of the Class and prosecuted this action alongside Proposed Co-Lead Class Counsel. They were at all times available to Proposed Co-Lead Class Counsel. Indeed, the combined efforts of Plaintiffs and Proposed Co-Lead Class Counsel ultimately led to the proposed Settlement and the benefits it makes available to the Class. Joint Decl. ¶32.

### F.   Plaintiffs' Proposed Co-Lead Class Counsel Should be Appointed as Class Counsel

In appointing class counsel, courts must consider (1) counsel's work in identifying or investigating claims; (2) counsel's experience in handling the types of claims asserted; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Proposed Co-Lead Class counsel have worked cooperatively and efficiently and committed substantial time and resources to this case. This work has included: (1) investigating the Data Security Incident; (2) researching and evaluating the appropriate legal claims to assert; (3) interviewing potential class representatives about their experiences; (4) preparing and filing a class action complaint; (5) opposing the motion to dismiss, (6) opposing the motion to stay discovery; (7) engaging in both formal and informal discovery with Defendant; (8) preparing for and participating in two mediation sessions and subsequent settlement discussions; and (9) negotiating the proposed settlement, preparing the settlement documentation, and moving for preliminary approval. Because Proposed Co-Lead Class Counsel have demonstrated their commitment to litigating these claims, the Court should appoint Stuart A.

Davidson of Robbins Geller Rudman & Dowd LLP, Alexandra M. Honeycutt of Milberg Coleman Bryson Phillips Grossman PLLC, and John A. Yanchunis of Morgan & Morgan as Class Counsel.

## V.    CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that guarantees Settlement Class Members significant relief in the form of reimbursement for Out-of-Pocket losses, as well as Pro Rata Cash Payment awards for California and non-California residents, and Defendant's commitment to make meaningful Business Practice Changes. For these and the above reasons, Plaintiffs respectfully requests this Court grant their Motion for Preliminary Approval of the Class Action Settlement.

DATED:  March 28, 2025              ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
                                      STUART A. DAVIDSON
                                      Florida Bar No. 0084824

                                      _/s/ Stuart A. Davidson_
                                      STUART A. DAVIDSON

                                      225 NE Mizner Boulevard, Suite 720
                                      Boca Raton, FL  33432
                                      Telephone:  561/750-3000
                                      561/750-3364 (fax)
                                      sdavidson@rgrdlaw.com

                                      MORGAN & MORGAN
                                      JOHN A. YANCHUNIS
                                      Florida Bar No. 324681
                                      201 N. Franklin Street, 7th Floor
                                      Tampa, FL  33602
                                      Telephone:  813/223-5505
                                      jyanchunis@ForThePeople.com

MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
ALEXANDRA M. HONEYCUTT *
800 S. Gay Street, Suite 1100
Knoxville, TN  37929
Telephone:  866/252-0878
ahoneycutt@milberg.com

*Plaintiffs' Co-Lead Counsel*

BILZIN SUMBERG
MICHAEL A. HANZMAN
Florida Bar No. 510637
1450 Brickell Avenue, 23rd Floor
Miami, FL  33131
Telephone:  305/350-2424
305/351-2253 (fax)
mhanzman@bilzin.com

*Plaintiffs' Liaison Counsel*

NUSSBAUM LAW GROUP, P.C.
LINDA P. NUSSBAUM *
1211 Avenue of the Americas, 40th Floor
New York, NY  10036
Telephone:  917-438-9189
lnussbaum@nussbaumpc.com

GEORGE FELDMAN McDONALD, PLLC
BRITTANY L. SACKRIN
Florida Bar No. 105071
9897 Lake Worth Road, Suite 302
Lake Worth, FL  33467
Telephone:  561/232-6002
BSackrin@4-justice.com

HAUSFELD LLP
STEVEN M. NATHAN *
888 16th Street N.W., Suite 300
Washington, DC  20006
Telephone:  202/540-7200
202/540 7201 (fax)
snathan@hausfeld.com

*Members of Plaintiffs' Executive Committee*

\* *Pro hac vice* granted