UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Master File No. 1:23-cv-21060-Williams

In re INDEPENDENT LIVING SYSTEMS          <u>CLASS ACTION</u>
DATA BREACH LITIGATION

_____

This Document Relates To:

    ALL ACTIONS.

_____

**<u>PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW</u>**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION AND PROCEDURAL HISTORY ............................................................. 2

II.   SUMMARY OF THE SETTLEMENT ................................................................ 4

III.  NOTICE PLAN, CLAIMS, OPT-OUTS AND OBJECTIONS ................................................ 7

IV.   ARGUMENT ................................................................................................. 10

  A.  The Settlement Class Should Be Certified, and the Appointments of Class
  Representatives, Class Counsel, and the Settlement Administrator Should Be Affirmed. ....... 10

  B.  The Settlement Should be Finally Approved. ................................................. 11

  C.  Notice Was Adequate and Satisfies Rule 23 and Due Process Requirements. .................. 18

V.    CONCLUSION ................................................................................. 19

4938-0618-1995.v1

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984) ........................................................................12, 14, 15

*Burrows v. Purchasing Power, LLC*,
2013 WL 10167232 (S.D. Fla. Oct. 7, 2013) ..............................................................16

*Carter v. Vivendi Ticketing US LLC*,
2023 WL 8153712 (C.D. Cal. Oct. 30, 2023) .............................................................18

*Gonzalez v. TCR Sports Broad. Holding, LLP*,
2019 WL 2249941 (S.D. Fla. May 24, 2019) ..............................................................15

*Hall v. Bank of Am., N.A.*,
2014 WL 7184039 (S.D. Fla. Dec. 17, 2014) ..............................................................15

*Hamilton v. SunTrust Mortg. Inc.*,
2014 WL 5419507 (S.D. Fla. Oct. 24, 2014) ..............................................................15

*In re Checking Account Overdraft Litig.*,
275 F.R.D. 654 (S.D. Fla. 2011) .................................................................................13

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
999 F.3d 1247 (11th Cir. 2021) .............................................................................16, 17

*In Re Lincare Holdings Inc. Data Breach Litig.*,
No. 8:22-cv-1472-TPB-AAS (M.D. Fla. June 24, 2024) ............................................17

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
2024 WL 1554329 (S.D. Fla. Apr. 10, 2024) .......................................13, 16, 17, 18

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
No. 21-MD-02994-RAR (S.D. Fla. Oct. 5, 2024) ......................................................17

*Lipuma v. Am. Express Co.*,
406 F. Supp. 2d 1298 (S.D. Fla. 2005) ...............................................................14, 15

*Lomedico v. MarineMax, Inc.*
No. 8:24-cv-01784-MSS-AEP (M.D. Fla. June 24, 2025) ........................................16

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)....................................................................................................19

*Perez v. Asurion Corp.*,
501 F. Supp. 2d 1360 (S.D. Fla. 2007) ......................................................................14

*Poertner v. Gillette Co.*,
   618 F. App'x 624 (11th Cir. 2015) ........................................................................13

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
   297 F.R.D. 683 (S.D. Fla. 2014) ..........................................................................14

*Sherwood v. Horizon Actuarial*,
   No. 1:22-cv-01495-ELR (N.D. Ga. April 2, 2024) ..............................................17

*Wilson v. EverBank*,
   2016 WL 457011 (S.D. Fla. Feb. 3, 2016) ...........................................................16

## STATUTES, RULES, AND REGULATIONS

Federal Rules of Civil Procedure
   Rule 23 .................................................................................................................1, 19
   Rule 23(a) ...........................................................................................................10, 19
   Rule 23(a)(4) ............................................................................................................11
   Rule 23(b)(3) ......................................................................................................10, 19
   Rule 23(c)(2)(B) .......................................................................................................18
   Rule 23(e) .................................................................................................................10
   Rule 23(e)(2) .......................................................................................................11, 12
   Rule 23(g)(1)(A) ......................................................................................................11
   Rule 23(g)(1)(B) ......................................................................................................11
   Rule 23(e)(2)(A) ......................................................................................................12
   Rule 23(e)(2)(B) ......................................................................................................13
   Rule 23(e)(2)(C) ......................................................................................................15
   Rule 23(e)(2)(D) ......................................................................................................18
   Rule 23(e)(3) ............................................................................................................12
   Rule 23(h)(1) ............................................................................................................19

4938-0618-1995.v1

Pursuant to Fed. R. Civ. P. 23 and the Court's Order dated July 7, 2025 (ECF 96), granting preliminary approval of the proposed Settlement, Plaintiffs David Asato, Katrina Berres, Ge Xiao Fang, Melinda Geleng, Mathew George, Maria Gomez, Dimitri Gutierrez, Chelsea Jensen, Rhianna McMullen, David Perez, Mark Salzano, Ernest Scoggan, and Ryan Smith ("Plaintiffs" or "Class Representatives")[1] respectfully submit this Unopposed Motion for Final Approval of Class Action Settlement, supported by a Joint Declaration of Co-Lead Class Counsel ("Joint Decl."), filed contemporaneously herewith, and the Declaration of Christie K. Reed of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement ("Kroll Decl."), attached as **Exhibit B**.

On July 3, 2025, this Court preliminarily approved the proposed Settlement (with the Order being entered on the docket on July 7, 2025–ECF 96). The Settlement provides for substantial Settlement Class Member Benefits, including a non-reversionary, all-cash $14,000,000.00 Settlement Fund, from which Settlement Class Members may elect to receive Pro Rata Cash Payments and Reimbursement for Out-of-Pocket Losses. The Settlement Fund will be used to pay Settlement Class Member Benefits, all Settlement Administration Costs, and any Court-awarded attorneys' fees and expenses, and Taxes and Tax Expenses.

Plaintiffs and Co-Lead Class Counsel now move the Court for Final Approval.[2] The Settlement satisfies all the criteria for Final Approval and there has been an overwhelmingly positive reaction from the Settlement Class. Except as noted and extensively discussed below, there have been no objections and 23 opt-outs (out of approximately 3.9 million Class Members)

---

[1]   All capitalized terms used herein shall have the same meanings as those defined in the Settlement Agreement, attached as **Exhibit A**.

[2]   Co-Lead Class Counsel's Motion for an Award of Attorneys' Fees and Expenses is being filed contemporaneously with this Motion for Final Approval.

as of the date of this Motion.[3] *See* Kroll Decl. ¶21.

The response of the Settlement Class, so far, affirms the Court's initial conclusion that the Settlement is fair, reasonable, and adequate. *See* ECF 96, ¶11. Class Counsel fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions and believe the proposed Settlement fairly resolves their respective differences. For all the reasons set forth herein, the Court should grant Final Approval of the Settlement.

## I.   INTRODUCTION AND PROCEDURAL HISTORY

This class action arises from a Data Security Incident that Plaintiffs allege compromised the security of their and other Settlement Class Members' Sensitive Information, including, but not limited to, PII and PHI that Defendant acquired from current and former patients, clients, and other persons during the ordinary course of its business, and which Plaintiffs allege Defendant was duty-bound to protect from unauthorized persons, including cyber criminals. The Sensitive Information affected by the Data Security Incident included a wide variety of information, including name, Social Security number, taxpayer identification numbers, medical or health insurance information, and other sensitive information.

On or around July 5, 2022, Defendant became aware of the Data Security Incident and began notifying impacted individuals of the Data Security Incident in or around March 14, 2023.

On March 17, 2023, the first class action lawsuit was filed against Defendant, following which several other actions were filed against Defendant in quick succession, each arising out of the Data Security Incident (collectively, the "Civil Actions"). On July 31, 2023, the Civil Actions were consolidated before the Honorable U.S. District Judge Kathleen M. Williams and U.S.

---

[3]   To the extent any objections to Final Approval are filed by the October 6, 2025 deadline, Plaintiffs will respond in their reply brief.

Magistrate Judge Lisette M. Reid in the U.S. District Court for the Southern District of Florida under a single civil action number. On November 13, 2023, Plaintiffs filed their operative Complaint on behalf of a putative Nationwide Class. *See* ECF 44.

Defendant moved to dismiss the Complaint on December 13, 2023 (ECF 48), which Plaintiffs opposed. *See* ECF 53. On May 14, 2024, Defendant moved to stay discovery pending resolution of its motion to dismiss. *See* ECF 64. Plaintiffs opposed a stay of discovery (ECF 65), and the Court denied Defendant's motion on June 17, 2024. *See* ECF 67.

Between April 2024 and September 2024, the Settling Parties engaged in significant discovery including, but not limited to, Plaintiffs serving Defendant with three sets of requests for production of documents and one set of interrogatories, Plaintiffs serving nine separate subpoenas on third-parties involved in Defendant's data security or the Data Security Incident, and Defendant serving document requests and interrogatories on all Plaintiffs. Moreover, Plaintiffs thoroughly researched and prepared a comprehensive draft motion for class certification and worked with multiple experts on issues relating to liability and damages to lay the groundwork for that motion and, ultimately, the trial of the case.

On September 10, 2024, the Settling Parties jointly moved the Court to stay the Litigation pending the Parties' November 6, 2024 mediation before Mr. Seth Aronson of Phillips ADR–a highly respected mediator with substantial experience with data privacy class actions. *See* ECF 77. The Court granted the Parties' motion. *See* ECF 78.

On November 6, 2024, the Settling Parties held an arm's-length, all-day mediation with Mr. Aronson. Although the Settling Parties made progress, no resolution was reached. However, the Settling Parties agreed that another effort to resolve the case through mediation was

appropriate, and jointly requested the Court continue the stay pending further mediation efforts. *See* ECF 81.

On December 11, 2024, the Settling Parties then engaged in their second attempt at mediation, which was another full-day mediation session conducted by Mr. Aronson. Over the course of the day, the Settling Parties engaged in arm's-length, hard-fought negotiations, which ultimately led to agreements to the mediator's proposal. The Settling Parties reached an agreement in principle on December 18, 2024, the terms of which were later finalized by way of the Settlement Agreement ("Settlement Agreement" or "SA") and its attached exhibits. The Settlement Agreement was executed, subject to preliminary and final approval by the Court.

Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law on March 28, 2025. ECF 90. The motion was referred to the magistrate [ECF 91], and on May 8, 2025, Magistrate Judge Reid issued her Report and Recommendation that the preliminary approval motion be granted. ECF 95. The Court subsequently adopted the Report and Recommendation and granted preliminary approval. ECF 96. Thereafter, Kroll commenced the Notice Plan and began overseeing the Claim submission process. *See generally* Kroll Decl. The Notice Plan has now been completed in full compliance with the Agreement and the Preliminary Approval Order, and the Claims process is ongoing. *Id.*

## II.     SUMMARY OF THE SETTLEMENT

**A.     Settlement Class.** Plaintiffs seek Final Approval of the Settlement on behalf of the following Settlement Class: "all persons residing in the United States whose personal information was exposed in the Data Breach at ILS." SA ¶1.44. The Settlement Class consists of approximately 3.9 million individuals. ECF 90 at 11.

**B.     Settlement Fund.** The Settlement Agreement negotiated on behalf of the Settlement Class provides for the Settlement Amount of Fourteen Million Dollars $14,000,000.00

("Settlement Amount") to be paid by wire transfer, along with any accrued interest, into the Settlement Fund. SA ¶¶1.43, 2.1. The Settlement Fund is non-reversionary. The Settlement Agreement provides that the Settlement Fund shall be the sole source of monetary funds for the payment of Settlement Benefits to Settlement Class Members as follows: (i) Pro Rata Cash Payments from Net Settlement Fund; and (ii) reimbursement for Out-of-Pocket losses up to $5,000. SA ¶¶3.1-3.7. Any Residual Funds shall be distributed to the Alzheimer's Association, a non-profit, *cy pres* recipient. SA ¶3.8.

**C.     Settlement Class Member Benefits**. The Settlement provides for the following Class Member Benefits:

**1.     Out-of-Pocket Loss Claims.** Settlement Class Members may claim reimbursement up to a maximum amount of $5,000 for documented Out-of-Pocket Losses, that more likely than not resulted from the Data Security Incident, subject to review and discretion of the Settlement Administrator. SA ¶3.3. Claims for approved Out-of-Pocket Loss Claims shall be paid prior to determining the amount of Cash Payments mentioned below, in paragraph 2. *Id.* ¶3.3.

**2.     *Pro Rata* Cash Payment Claims**. All Settlement Class Members who submit an Approved Claim, may request one form of Cash Payment (either California Cash Payment or Pro Rata Cash Payment) (the "Cash Payment") after they submit their Claim Form to the Settlement Administrator by the deadline. SA ¶3.2.

**a.     California Cash Compensation (California Cash Payment):** After the payment for Out-of-Pocket Loss Claims, the Settlement Administrator will issue California Cash Payments from the remaining Net Settlement Fund, consisting of two pro rata shares (2x) of the Remaining Fund for each Settlement Class Member residing in California at the time of the Data Security Incident. *Id.* Settlement Class Members claiming the California Cash

4938-0618-1995.v1

Payment must attest that they resided in California on June 30, 2022. *Id.* The intention of awarding two pro rata shares to those validly claiming the California Cash Payments is to reasonably account for the potential value of the California statutory claims alleged in this Litigation. *Id.*

> **b.** **Cash Compensation (Pro Rata Cash Payment):** After the payment of Out-of-Pocket Loss Claims, the Settlement Administrator will issue Pro Rata Cash Payments of a single pro rata share of the remaining Net Settlement Fund for each Settlement Class Member who did not reside in California at the time of the Data Security Incident. *Id.*

**D.** **Residual Funds**. If any monies remain in the Net Settlement Fund (due to returned or uncashed checks or otherwise) more than 120 calendar days after the distribution of Settlement Payments described above, and it is not economically feasible to distribute the residual funds to class members who have filed claims and whose claims have been allowed, then such residual funds shall be distributed to the *cy pres* recipient, the Alzheimer's Association. SA ¶3.8.

**E.** **Business Practices Changes**. In the Settlement Agreement, Defendant also represented that, since the Data Security Incident and in part as a result of the Litigation, it implemented certain Business Practice Changes that resulted in a new incremental spend of more than $2 million. SA ¶3.9. In addition, Defendant represents that, in part as a result of the Litigation, it maintained those Business Practice Changes. *Id.* As part of the Settlement, Defendant has prepared for Co-Lead Class Counsel a confidential statement subject to the protective order in the Litigation that outlines the Business Practice Changes already implemented, which can be submitted to the Court, in camera, if required. ECF 90 at 13.

**F.** **Release.** As set forth in more detail in the Settlement Agreement, upon the date the Judgment becomes Final, each Settlement Class Member, including Class Representatives, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever

released, relinquished, and discharged all Released Claims against all Released Persons. SA ¶9.1. Further, upon the date the Judgment becomes Final, and to the fullest extent permitted by law, each Settlement Class Member, including Class Representatives, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims is asserted. *Id.* Defendant shall release and discharge Settlement Class Members, Plaintiffs, and Class Counsel from any claims that arise out of or relate in any way to the institution, prosecution, or settlement of the Litigation, except for claims relating to the enforcement of the Settlement, and for the submission of false or fraudulent claims for settlement benefits. *Id.*

### G. Attorneys' Fees and Expenses

Pursuant to the Settlement Agreement and contemporaneously with this motion, Co-Lead Class Counsel submits a request to the Court for an award of reasonable attorneys' fees in the amount of $4,666,667.00 (one-third of the Settlement Amount), and for an award of Plaintiffs' counsel's reasonable expenses in the amount of $92,509.15. SA ¶10.1.

## III.  NOTICE PLAN, CLAIMS, OPT-OUTS AND OBJECTIONS

The Notice Plan here, designed and carried out by Kroll, was robust, effective, and the best notice practicable under the circumstances. Notice was carried out by a combination of direct mail notice and a digital media publication notice program, as described in the Kroll Declaration attached hereto as Exhibit B.

On April 7, 2025, Kroll sent CAFA notice in accordance with the statute. Kroll Decl. ¶4. On July 14, 2025, Kroll received five data files from the Defendant that collectively compromised the Class List for nearly 3.9 million putative Settlement Class Members. *Id*. ¶5. After taking

7

multiple steps to review and de-duplicate the Class List, and running addresses through the National Change of Address ("NCOA") databases, Kroll was left with a population of 2,428,283 for whom direct notice contact information was available (including 2,427,736 presumptively good mailing addresses). *Id*.

On August 6, 2025, Kroll caused the mailing of 2,427,736 Short Notices via first-class mail. Kroll Decl. ¶10. On that same day, Kroll caused the Email Notice to be sent to the 547 email addresses on file for Settlement Class Members who had an email address available in the Class List. *Id*. ¶11. After all remailings and additional attempts at email delivery, Kroll has reason to believe that notices likely reached or will have reached 2,251,671 of the 2,428,283 persons to whom direct mail notice was sent, which equates to a reach rate of the direct mail notice of approximately 92.7%. *Id*. ¶15.

In addition to the direct notice effort, and to give the best possible notice to those Settlement Class Members for whom Defendant has no good direct contact information, Kroll caused an online media campaign to commence on August 6, 2025, and which will be substantially completed by September 20, 2025. Kroll Decl. ¶12. Approximately 290 million digital media impressions were planned to be served to adults 25 years of age or older nationwide through display banner ads and via Facebook and Instagram. *Id*. As of September 8, 2025, 226,358,940 impressions have been served, the media notice is continuing, and it is on track to deliver the full 290 million digital media impressions. *Id*.

Given the current number of digital media impressions (approximately 226 million) and experience with similar digital media notice campaigns, when the media campaign is complete the combined online media campaign and direct notice reach will achieve a combined 88% Notice Program reach, with an estimated average frequency of exposure to notice of the Settlement 2.1

times. Kroll Decl. ¶16. This overall reach rate is consistent with other court-approved best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches over 70% of class members is considered a high percentage and the "norm" of a notice campaign. *Id.*

The direct notice and digital media campaign were supplemented by Kroll establishing a dedicated Settlement website that "went live" on August 6, 2025, a toll-free telephone number with an Interactive Voice Response that provides additional information about the Settlement, and a dedicated post office box and email address for Class Member inquiries. Kroll Decl. ¶¶6-9.

The response of the Settlement Class, as judged by the objection, opt-outs, and claims rate, is overwhelmingly positive, and demonstrates the effectiveness of the Notice Program. To date, only one person has submitted anything that even resembles an objection, and has offered no explanation for the objection. Kroll Decl. ¶21. On August 18, 2024, one individual purporting to be a Settlement Class Member emailed the Settlement Administrator stating, "I object to this. I wish to remain a part of the settlement, but not bound by that status to relieve you of your liability regarding your breach of my data." *See* **Exhibit C**, hereto. This email does not satisfy the requirements for opt-out or objection to the Settlement. *See* ECF 90 at 14–15. As to the opt-out procedures, the email was not submitted to the "designated postal address established by the Settlement Administrator" and does not "clearly manifest a Person's intent to be excluded from the Settlement Class," ECF 90-1 at 30 (S.A. ¶7.1), but instead expresses an intent to remain a part of the settlement. *Id.* As to the objection procedures, the email does not include any of the elements set forth in the Settlement Agreement, including the grounds for the objection and legal support (S.A. ¶8.1(c)), the identity of counsel (*id.* ¶8.1(d)), or a list of persons to testify at the Final

Approval Hearing (*id.* ¶8.1(e)). The contradictory and insufficient statements (*i.e.*, get the benefits of the settlement but not be bound by the release) in the email make it a nullity.

There are only 23 timely requests for opt-out of a Settlement Class of almost 3.9 million persons. Kroll Decl. ¶21. As of September 9, 2025, Kroll has received 19,638 Claim Forms through the mail and 275,843 Claim Forms filed electronically through the Settlement Website, for a total of 295,481 claims to date, with approximately 7-8 weeks left before the Claims Deadline. *Id.* ¶18. This equates to a current claims rate of approximately 7.6% (with the claims still subject to final validation), which is a high claims rate at both this stage of the claims process, and for comparable data breach settlements overall. *Id.* Across data incident settlements generally, the average claim rate is 3.04% with a median rate of 2.04%. *Id.* The current high claims rate confirms both the effectiveness of the Notice Program, and the positive reaction of this Class to the Settlement.

## IV.    ARGUMENT

### A.    The Settlement Class Should Be Certified, and the Appointments of Class Representatives, Class Counsel, and the Settlement Administrator Should Be Affirmed.

The Unopposed Motion for Preliminary Approval detailed the bases for certifying the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3). In compliance with Fed. R. Civ. P. 23(e), the Court's Preliminary Approval Order details its findings for why it would be likely to certify the Settlement Class at the Final Approval stage, finding the following requirements were all met with respect to a Settlement Class: standing, ascertainability, numerosity, commonality, typicality, adequacy of representation, predominance, and superiority. ECF 96. Nothing has changed since Preliminary Approval was granted and the Settlement Class was provisionally certified. Therefore, for brevity's sake, Plaintiffs do not repeat their arguments in support of Settlement Class certification and instead incorporate their arguments from Plaintiffs' Preliminary Approval Motion by reference. ECF 90 at 18-25.

Plaintiffs' appointment as the Class Representatives should be affirmed as well, as they remain adequate representatives. Joint Decl. ¶29. For the same reasons the Court found them adequate under Fed. R. Civ. P. 23(a)(4), the Court should also affirm the designation of Stuart A. Davidson of Robbins Geller Rudman & Dowd LLP, Alexandra M. Honeycutt of Milberg Coleman Bryson Phillips Grossman PLLC, and John A. Yanchunis of Morgan & Morgan as Class Counsel. Federal Rule of Civil Procedure 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Here, Class Counsel are qualified and competent leaders in the field with extensive experience prosecuting and resolving complex class actions, including data breach class actions. Before commencing litigation, they investigated the claims against Defendants, interviewed potential plaintiffs, consulted with data experts, and gathered information regarding the Cybersecurity Incident. Joint Decl. ¶2. Class Counsel and other plaintiffs' counsel under their direction have devoted substantial time and resources to this Litigation and will continue to do so. *Id.* ¶13.

### B.  The Settlement Should be Finally Approved.

The Preliminary Approval Order found the Court would likely finally approve the Settlement after considering and finding the Settlement is fair, adequate, and reasonable under Fed. R. Civ. P. 23(e)(2) and the *Bennett* factors. ECF 96. Now, the Court should grant Final Approval considering those same factors, being able to now judge the Settlement Class's positive reaction

to the Settlement with no valid objections and receipt of over 295,481 Claims.

The Rule 23(e)(2) factors are:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arms' length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

The *Bennett* factors include the following: (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

    **1.**    **Adequacy of Representation (Rule 23(e)(2)(A))** - As another judge of this Court held in *In re Mednax Services, Inc., Customer Data Security Breach Litigation*, "[t]he first factor heavily weighs in favor of granting preliminary approval because both Class Counsel and the Class Representative have adequately represented the Class." 2024 WL 1554329, at *6 (S.D. Fla. Apr. 10, 2024). Here, Class Counsel thoroughly investigated and analyzed Plaintiffs' claims and fully briefed the motion to dismiss filed by Defendants. Joint Decl. ¶13. They also consulted data security experts, enabling them to gain an understanding of the evidence related to central questions in the Litigation and prepared them for well-informed settlement negotiations. *See id.* ¶14; s*ee also Mednax*, 2024 WL 1554329, at *6. Class Counsel used both formal and informal discovery to learn what caused the Data Security Incident and what Sensitive Information was

impacted in the Data Security Incident, before attending two full-day mediation sessions. Joint Decl. ¶¶5-8. Class Counsel used their experience in complex class action litigation, including similar data breach actions, and devoted substantial time and resources to vigorous litigation. *See id.* ¶14.

The Class Representatives have demonstrated their adequacy for purposes of this Settlement Class by (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) collecting and producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available to Class Counsel as needed throughout the Litigation; and (v) monitoring the Litigation. *Id.* ¶29. Plaintiffs respectfully submit that their respective interests are coextensive and do not conflict with the interests of the Settlement Class and that they have the same interest in the Settlement relief, and the absent Settlement Class Members have no diverging interests. *Id.* ¶28.

2.      **The Settlement Was Negotiated at Arm's-Length (Rule 23(e)(2)(B)** -

The Settlement is without collusion and the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake, and with the assistance of a mediator, Seth Aronson, Esq. *Id.* ¶¶6-8. These circumstances weigh in favor of final approval. *See, e.g.*, *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) (concluding that a settlement achieved only after engaging in extensive arm's-length negotiations moderated by an experienced mediator belies any suggestion of collusion); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) (approving settlement where it "was reached in the absence of collusion, is the product of informed, good-faith, arms'-length negotiations between the parties and their capable and experienced counsel, and was reached with the assistance of a well-qualified and experienced

mediator"); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

Moreover, Class Counsel's significant formal discovery and mediation with an experienced mediator has ensured a fair, reasonable, and adequate Settlement. *Id.*; *see also Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (approving settlement where parties settled relatively early with experienced counsel who had sufficient information to evaluate merits of the case, engaged in full-day mediation, and engaged in post-mediation discovery).

3.     **This Case Settled at an Appropriate Stage of the Proceedings (*Bennett Factor 6*) –** The timing of this Settlement–after full briefing of a motion to dismiss and significant formal discovery by the Parties, further supports final approval. This *Bennett* factor "is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (citations omitted).

Here, the Settling Parties engaged in significant document discovery to understand the strengths and weaknesses in the Litigation. They participated in informal pre-mediation discovery as well. Thus, the Settling Parties had sufficient information to adequately evaluate the merits of the case. Among the information shared through formal and pre-mediation discovery was class size and demographics, information regarding the technical aspects of the Data Security Incident, and Defendants' liability and security enhancements. Additionally, Class Counsel relied on their experience presenting expert evidence and litigating the key legal issues in other major data breach cases to assist in evaluating the merits of this case. Joint Decl. ¶14. As recognized in other cases, "[i]nformation obtained from other cases may be used to assist in evaluating the merits of a

proposed settlement of a different case." *Lipuma*, 406 F. Supp. 2d at 1325. Accordingly, Plaintiffs had more than sufficient information available to weigh the benefits of Settlement against further Litigation. *See, e.g.*, *Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941, at *5 (S.D. Fla. May 24, 2019) ("the early settlement reached between the parties and the extent to which the parties were informed about the merits of their claims and defenses weighs in favor of approving the Settlement Agreement.").

**4.     The Settlement Class Overwhelmingly Supports the Settlement (*Bennett* Factor 5)** – The reaction of the Settlement Class to the Settlement has been extremely positive, as no valid objections have been filed to date and 23 opt-outs have been received. *See* Kroll Decl. ¶21. Indeed, apart from the August 18, 2025 email discussed above, there has been no class member who has voiced any objection to the settlement. These are powerful indicators that the Settlement is fair, reasonable, and adequate and worthy of final approval. *See Hall v. Bank of Am., N.A.*, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (finding the settlement was reasonable and fair where only nine objections were filed on behalf of 17 class members, which equated to less than 0.0016% of the class); *Hamilton v. SunTrust Mortg. Inc.*, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) (finding the fact there was only one objection to the settlement, which equated to less than 0.003% of the class, to be "clear evidence of [the settlement's] reasonableness and fairness"). The lack of opposition to the Settlement, along with the minimal opt-outs (less than 0.0001%), overwhelmingly support the Court's granting of final approval.

**5.     The Adequacy of the Settlement Relief (Rule 23(e)(2)(C) and *Bennett* Factors 1-4)** – Although Plaintiffs believe the claims asserted are meritorious and the Settlement Class would ultimately prevail at trial, continued, complex, and expensive litigation against Defendant poses significant risks that make any recovery for the Settlement Class uncertain. Data

breach class actions are risky. *Mednax*, 2024 WL 1554329 at *7; Order, *Lomedico v. MarineMax, Inc.* No. 8:24-cv-01784-MSS-AEP, (M.D. Fla. June 24, 2025), ECF. 38 at 13 ("Continued litigation of this action would be complex, expensive, and risky for both Parties."). The Settlement's fairness is underscored by the obstacles the Settlement Class would face in ultimately succeeding on the merits, as well as the litigation's expense and likely duration. *Mednax*, 2024 WL 1554329 at *7. Should this litigation continue, class certification is a significant hurdle that introduces additional complexities, including the potential for denial of certification. *See, e.g.*, *Wilson v. EverBank*, 2016 WL 457011, at *8 (S.D. Fla. Feb. 3, 2016) ("Plaintiffs might have recovered nothing for themselves or the class had they proceeded with litigation. Plaintiffs would have faced motions for class certification and for summary judgment, and possibly a lengthy trial and an appeal. Claims based on similar facts and the same or [similar] legal theories as those advanced here have met with mixed results in courts across the country, on both dispositive motions and class certification."). Given those risks, the Settlement provides outstanding benefits. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) ("Settlements also save the bench and bar time, money, and headaches.").

The Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. *See Burrows v. Purchasing Power, LLC*, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013) (finding similar settlement in doubtful and disputed data breach case to be fair, reasonable, and adequate). In determining whether a settlement is fair and reasonable, the Court must also examine the range of possible damages Plaintiffs could recover at trial and combine this with an analysis of Plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries. *See, e.g.*, *Equifax*, 999 F.3d at 1274 (affirming district court's decision that settlement was "fair, reasonable, and adequate because the settlement reflects relief the Court finds

16

is in the high range of what could have been obtained had the parties continued to litigate.")
(cleaned up). In terms of relief offered, the Settlement is as comprehensive as nearly any other data
breach settlement, and the specific benefits compare favorably to what has been previously
approved by federal courts and affirmed on appeal, including a sizeable reimbursement for up to
$5,000 of Out-of-Pocket Losses; Pro Rata Cash Payments; disbursement of Residual Funds to a
worthy *cy pres* recipient; and Defendant's commitment to make meaningful Business Practice
Changes.

A few recent examples of approved data breach settlements from federal courts in Florida
and the Eleventh Circuit demonstrate how the instant Settlement compares very favorably to other
similar common fund data breach settlements. See *In re Mednax Servs., Inc., Customer Data Sec.
Breach Litig.*, No. 21-MD-02994-RAR (S.D. Fla. Oct. 5, 2024), ECF 328 (Ruiz, J.) (approving $6
million settlement on behalf of 2,712,790 class members); *In Re Lincare Holdings Inc. Data
Breach Litig.*, No. 8:22-cv-1472-TPB-AAS (M.D. Fla. June 24, 2024), ECF 126 (finally approving
$7,250,000 settlement on behalf of 2.9 million class members); *Sherwood v. Horizon Actuarial*,
No. 1:22-cv-01495-ELR (N.D. Ga. April 2, 2024), ECF 94 (finally approving at $8,733.446
common fund settlement for 4,386,969 class members).

Also, the Claim Form submission process was, and the planned distribution of Settlement
Class Member Benefits is, fair, convenient, and effective. *See generally* Kroll Decl. Settlement
Class Members will promptly receive Cash Payments by electronic means or paper check. Kroll
is highly qualified to manage the entire process. *Id*. "Thus, through the Settlement, Plaintiffs and
Settlement Class Members gain significant benefits without having to face further risk of not
receiving any relief at all." *Mednax*, 2024 WL 1554329, at *7.

Finally, with the exception of the separate writing referenced in Paragraph 7.4 of the

Settlement Agreement, the Parties' agreements are all contained in the Settlement Agreement.

        **6.**      **The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(D))** – As the court found in *Mednax*, 2024 WL 1554329, at *7, all Settlement Class members are given an equal opportunity to claim Settlement Class Member Benefits. The additional benefit for California Class Members is reasonable and equitable. *See, e.g.*, *Carter v. Vivendi Ticketing US LLC*, 2023 WL 8153712, at *11 (C.D. Cal. Oct. 30, 2023) (granting final approval in data breach settlement and noting, "[t]he Settlement also treats California sub-class members differently than class members from other states based on their claims that provide for statutory damages. This distinction is also reasonable. The release is also the same for all class members. The Court finds that the Settlement treats class members equitably."). Thus, "[t]he method of distributing the settlement benefits will be equitable and effective." *Mednax*, 2024 WL 1554329, at *7.

        Accordingly, the Court should find the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class members.

        **C.**      **Notice Was Adequate and Satisfies Rule 23 and Due Process Requirements.**

        Pursuant to Kroll's data, the Court-approved Notice Plan carried out by Kroll will likely reach approximately 88% of the Settlement Class Members and conforms with the procedural and substantive requirements of due process and Rule 23. Kroll Decl. ¶16. Settlement Class Members received Notice of the Settlement and have the opportunity to be heard and participate in the Action. *See* Fed. R. Civ. P. 23(c)(2)(B).

        The Court exercised its discretion to approve a reasonable Notice Plan. As the Court held when granting Preliminary Approval, the proposed notices and the website "fairly and adequately" described the terms and effect of the Settlement Agreement and of the Settlement, notified the

Settlement Class concerning the plan of allocation of Settlement Benefits, and gave adequate notice of the attorneys' fees to be sought, the final approval hearing date, and the procedures for objecting or seeking exclusion. ECF 96. The best notice practicable is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The Notices included, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day to opt-out of the Settlement Class; the last day to object to the Settlement or Fee Application; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. *See* ECF 90-1, Exhibits B and D. The Notice Plan also included a toll-free number with an interactive voice recording (IVR) system that provides answers to frequently asked questions, and a dedicated email inbox where Class Members can ask questions about the settlement and receive written responses. Also, the Settlement Website containing relevant Settlement Information. Finally, the Notice Plan satisfies the requirements of Rule 23(h)(1), as it notifies the Settlement Class that Class Counsel may apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, plus an award of reasonable expenses. *See id.*

## V.    CONCLUSION

Plaintiffs and Class Counsel respectfully request this Court enter an order: (1) granting Final Approval to the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) confirming the appointment of Plaintiffs as Class Representatives; and (4) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation.

Dated: September 22, 2025                    Respectfully submitted,

                                            ROBBINS GELLER RUDMAN
                                               & DOWD LLP
                                            STUART A. DAVIDSON
                                            Florida Bar No. 0084824


                                            _____*/s/ Stuart A. Davidson*_____
                                                STUART A. DAVIDSON

                                            225 NE Mizner Boulevard, Suite 720
                                            Boca Raton, FL  33432
                                            Telephone:  561/750-3000
                                            561/750-3364 (fax)
                                            sdavidson@rgrdlaw.com

                                            MORGAN & MORGAN
                                            JOHN A. YANCHUNIS
                                            Florida Bar No. 324681
                                            201 N. Franklin Street, 7th Floor
                                            Tampa, FL  33602
                                            Telephone:  813/223-5505
                                            jyanchunis@ForThePeople.com

                                            MILBERG COLEMAN BRYSON
                                            PHILLIPS GROSSMAN, PLLC
                                            ALEXANDRA M. HONEYCUTT *
                                            800 S. Gay Street, Suite 1100
                                            Knoxville, TN  37929
                                            Telephone:  866/252-0878
                                            ahoneycutt@milberg.com

                                            *Plaintiffs' Co-Lead Counsel*

                                            BILZIN SUMBERG
                                            MICHAEL A. HANZMAN
                                            Florida Bar No. 510637
                                            1450 Brickell Avenue, 23rd Floor
                                            Miami, FL  33131
                                            Telephone:  305/350-2424
                                            305/351-2253 (fax)
                                            mhanzman@bilzin.com


                                            *Plaintiffs' Liaison Counsel*

20

4938-0618-1995.v1

NUSSBAUM LAW GROUP, P.C.
LINDA P. NUSSBAUM *
1211 Avenue of the Americas, 40th Floor
New York, NY  10036
Telephone:  917-438-9189
lnussbaum@nussbaumpc.com

GEORGE FELDMAN McDONALD, PLLC
BRITTANY L. SACKRIN
Florida Bar No. 105071
9897 Lake Worth Road, Suite 302
Lake Worth, FL  33467
Telephone:  561/232-6002
BSackrin@4-justice.com

HAUSFELD LLP
STEVEN M. NATHAN *
888 16th Street N.W., Suite 300
Washington, DC  20006
Telephone:  202/540-7200
202/540 7201 (fax)
snathan@hausfeld.com

*Members of Plaintiffs' Executive Committee*

* *Pro hac vice* granted

4938-0618-1995.v1

## <u>LOCAL RULE 7.1(a)(2) CERTIFICATION</u>

I hereby certify that prior to filing this motion, I conferred with counsel for Defendant, who authorized me to represent that Defendant does not oppose the relief sought in this motion.


*/s/ Stuart A. Davidson*
STUART A. DAVIDSON

4938-0618-1995.v1