UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Master File No. 1:23-cv-21060-Williams

In re INDEPENDENT LIVING SYSTEMS          <u>CLASS ACTION</u>
DATA BREACH LITIGATION

_____

This Document Relates To:

     ALL ACTIONS.

_____/

**CO-LEAD CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES
AND EXPENSES AND INCORPORATED MEMORANDUM OF LAW**

- 1 -

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................................................................................1

II. BACKGROUND ....................................................................................................3

III. LEGAL STANDARD.............................................................................................4

IV. ARGUMENT ........................................................................................................5

     A.    Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund .............................................................................................................5

          1.    The Results Obtained Predominate.............................................................8

          2.    The Claims Against ILS Required Substantial Time and Labor ................9

          3.    The Novelty and Difficulty of the Questions Involved in This Litigation Required the Skill of Highly Trained Attorneys ....................10

          4.    Class Counsel Assumed Considerable Risk to Pursue This Matter on a Pure Contingency Basis ...................................................................13

          5.    The Requested Fee Comports with Fees Awarded in Similar Cases.........15

          6.    The Remaining *Camden I* and Other Factors Favor Approval .................16

     B.    Although Unnecessary, an Analysis of Lodestar Confirms the Reasonableness of the Requested Attorneys' Fees .................................................17

     C.    The Litigation Costs and Expenses Are Reasonable .............................................19

V. CONCLUSION....................................................................................................20

4929-1757-9371.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Allapattah Servs., Inc. v. Exxon Corp.*,
454 F. Supp. 2d 1185 (S.D. Fla. 2006) ........................................................................12, 17

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp.*,
77 F.4th 74 (2d Cir. 2023) .......................................................................................14

*Atkinson v. Wal-Mart Stores, Inc.*,
2011 WL 6846747 (M.D. Fla. Dec. 29, 2011) ................................................................16

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988) ..........................................................................13, 14

*Blum v. Stenson*,
465 U.S. 886 (1984) .............................................................................................16

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ...........................................................................................4, 5

*Cabot E. Broward 2 LLC v. Cabot*,
2018 WL 5905415 (S.D. Fla. Nov. 9, 2018) ........................................................2, 6, 8, 12

*Camden I Condo. Ass'n v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) ........................................................................ *passim*

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
2012 WL 12540344 (N.D. Ga. Oct. 26, 2012) ..............................................................11, 19

*Cravens v. Garda CL Se., Inc.*,
No. 24-CV-80400-BER, slip op. (S.D. Fla. Sep. 11, 2025) ...................................................6

*Duckworth v. Whisenant*,
97 F.3d 1393 (11th Cir. 1996) ................................................................................18

*Edmonds v. United States*,
658 F. Supp. 1126 (D.S.C. 1987) .............................................................................10

*Fulton-Green v. Accolade, Inc.*,
2019 WL 4677954 (E.D. Pa. Sep. 24, 2019) ..................................................................10

*George v. Acad. Mortg. Corp. (UT)*,
369 F. Supp. 3d 1356 (N.D. Ga. 2019) ........................................................................11

- ii -

**Page**

*George v. Duke Energy Ret. Cash Balance Plan*,
  2011 WL 13218031 (D.S.C. May 16, 2011)............................................................14

*Gevaerts v. TD Bank, NA*,
  2015 WL 6751061 (S.D. Fla. Nov. 5, 2015)........................................................5, 17

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ..............................................................................14

*Gutter v. E.I. DuPont De Nemours & Co.*,
  No. 95-cv-2152-ASG (S.D. Fla. May 30, 2003),....................................................16

*Hamilton v. SunTrust Mortg. Inc.*,
  2014 WL 5419507 (S.D. Fla. Oct. 24, 2014)..........................................................6

*Hanley v. Tampa Bay Sports & Ent. LLC*,
  2020 WL 2517766 (M.D. Fla. Apr. 23, 2020)..........................................................7

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)...............................................................................................8

*In re TD Ameritrade Account Holder Litig.*,
  2011 WL 4079226 (N.D. Cal. Sep. 12, 2011) ........................................................10

*In re BankAtlantic Bancorp, Inc.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011),
  *aff'd on other grounds sub nom*, *Hubbard v. BankAltantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) ..............................................................................14

*In re Checking Acct. Overdraft Litig.*,
  2020 WL 4586398 (S.D. Fla. Aug. 10, 2020),
  *aff'd*, 2022 WL 472057 (11th Cir. Feb. 16, 2022)...........................................2, 8, 13

*In re Checking Acct. Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) ........................................................4, 12, 17

*In re Citrix Data Breach Litig.*,
  2021 WL 2410651 (S.D. Fla. June 11, 2021) ..........................................................6

*In re Continental Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) .............................................................................13, 16

**Page**

*In re Flowers Foods, Inc. Sec. Litig.*,
2019 WL 6771749 (M.D. Ga. Dec. 11, 2019) .......................................................................7

*In re Fortra File Transfer Software Data Sec. Breach Litig.*,
2025 WL 457896 (S.D. Fla. Feb. 11, 2025) ..............................................................2, 6, 7, 16

*In re Health Ins. Innovations Sec. Litig.*,
2021 WL 1341881 (M.D. Fla. Mar. 23, 2021) ....................................................................17

*In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prods. Liab. Litig.*,
2023 WL 2284684 (S.D. Fla. Feb. 28, 2023),
*vacated and remanded on other grounds by*
2024 WL 3065907 (11th Cir. June 20, 2024) ....................................................................11

*In re Lincare Holdings Inc. Data Breach Litig.*,
No. 8:22-cv-1472-TPB-AAS (M.D. Fla. June 24, 2024).......................................................9

*In re: Managed Care Litig. v. Aetna Inc.*,
2003 WL 22850070 (S.D. Fla. Oct. 24, 2003).....................................................................16

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
2024 WL 4415214 (S.D. Fla. Oct. 5, 2024).................................................................2, 7, 16

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
No. 21-MD-02994-RAR (S.D. Fla. Oct. 5, 2024) ................................................................9

*In re Solara Med. Supplies Data Breach Litig.*,
No. 3:19-cv-02284-H-KSC (S.D. Cal. Sep. 12 2022) ............................................................2

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
2019 WL 3773737 (N.D. Ohio Aug. 12, 2019)....................................................................10

*In re Sunbeam Sec. Litig.*,
176 F. Supp. 2d 1323 (S.D. Fla. 2001) ........................................................... *passim*

*In re Terazosin Hydrochloride Antitrust Litig.*,
No. 99-md-1317-PAS (S.D. Fla. Apr. 19, 2005).................................................................16

*In re U.S. Steel Consol. Cases*,
2023 WL 11997192 (W.D. Pa. Mar. 21, 2023) ...................................................................20

**Page**

*In re Vivendi Universal, S.A., Sec. Litig.*,
    842 F. Supp. 2d 522 (S.D.N.Y. 2012) ...................................................................... 14

*In re Walter Energy, Inc. Sec. Litig.*,
    2016 WL 7230505 (N.D. Ala. May 3, 2016) ............................................................ 7

*In re Williams Sec. Litig. - WCG Subclass*,
    558 F.3d 1130 (10th Cir. 2009) ............................................................................... 14

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ................................................................................... 7

*Kukorinis v. Walmart, Inc.*,
    2024 WL 3226772 (M.D. Fla. June 28, 2024) ........................................................ 6

*Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
    2015 WL 5626414 (N.D. Ala. Sep. 14, 2015) ........................................................ 20

*McWhorter v. Ocwen Loan Servicing, LLC*,
    2019 WL 9171207 (N.D. Ala. Aug. 1, 2019) ......................................................... 7

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) ................................................................................................ 20

*Morefield v. NoteWorld, LLC*,
    2012 WL 1355573 (S.D. Ga. Apr. 18, 2012) .......................................................... 16

*Morgan v. Pub. Storage*,
    301 F. Supp. 3d 1237 (S.D. Fla. 2016) ................................................................... 7

*Norman v. Housing Auth. of City of Montgomery*,
    836 F.2d 1292 (11th Cir. 1988) ............................................................................... 18

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986), *supplemented*, 483 U.S. 711 (1987) ...................................... 18

*Pinto v. Princess Cruise Lines, Ltd.*,
    513 F. Supp. 2d 1334 (S.D. Fla. 2007) ................................................................... 18

*Ressler v. Jacobson*,
    149 F.R.D. 651 (M.D. Fla. 1992) ............................................................................ 13

- v -

**Page**

*Reyes v. AT&T Mobility Servs., LLC,*
2013 WL 12219252 (S.D. Fla. June 21, 2013) ..........................................................................6

*RJR Nabisco, Inc. Sec. Litig.,*
Fed. Sec. L. Rep. (CCH) ¶94 (S.D.N.Y. 1992)........................................................................16

*Robbins v. Koger Props., Inc.,*
116 F.3d 1441 (11th Cir. 1997) ...............................................................................................15

*Sawyer v. Intermex Wire Transfer, LLC,*
2020 WL 5259094 (S.D. Fla. Sep. 3, 2020) ..............................................................................7

*Seghroughni v. Advantus Rest., Inc.,*
2015 WL 2255278 (M.D. Fla. May 13, 2015)..........................................................................15

*Walco Invs., Inc. v. Thenen,*
975 F. Supp. 1468, 1472 (S.D. Fla. 1997) .................................................................................8

*Waters v. Int'l Precious Metals Corp.,*
190 F.3d 1291 (11th Cir. 1999) ....................................................................................6, 15, 18

*Wolff v. Cash 4 Titles,*
2012 WL 5290155 (S.D. Fla. Sep. 26, 2012) ...................................................................15, 16

**STATUTES, RULES, AND REGULATIONS**

Federal Rule of Civil Procedure 23(h)....................................................................................4, 19

4929-1757-9371.v1

Co-Lead Class Counsel[1] respectfully move for an award of attorneys' fees in the amount of $4,666,666.67 (*i.e.*, one-third of the Settlement Fund) and $92,509.15 in expenses that were reasonably and necessarily incurred to prosecute the Litigation. As grounds, therefore, Co-Lead Class Counsel state as follows:

## I.   INTRODUCTION

Court-appointed Co-Lead Class Counsel, with the assistance of other plaintiffs' counsel and Plaintiffs themselves, secured an outstanding non-reversionary cash recovery of $14,000,000 (the "Settlement Amount") on behalf of the Class. Indeed, as noted in Plaintiffs' accompanying Unopposed Motion for Final Approval of Class Action Settlement and Incorporated Memorandum of Law (the "Final Approval Memorandum"), the proposed Settlement represents a substantial recovery for the Class. The Settlement is a highly favorable result and was achieved through the skill, unabated hard work, and effective advocacy of Co-Lead Class Counsel and others.

Co-Lead Class Counsel took this case on a contingency basis and with no guarantee of ever being paid. As compensation for their efforts, Co-Lead Class Counsel respectfully applies for an award of attorneys' fees representing one-third of the Settlement Fund and $92,509.15 in expenses that were reasonably and necessarily incurred to prosecute the Litigation. Co-Lead Class Counsel and other plaintiffs' counsel expended over 3,536.40 hours litigating this action, which included: (i) conducting a thorough investigation of all potential claims, including an analysis of the Data Security Incident; (ii) filing a highly detailed consolidated complaint; (iii) defeating Defendant's motion to stay discovery; (iv) serving comprehensive written discovery on Defendant and meeting and conferring extensively over the same; (v) responding to Defendant's written discovery on over

---

[1]   Unless defined, capitalized terms have the same meaning attributed to them in the Class Action Settlement Agreement ("Settlement Agreement" or "SA") (ECF 90-1).

a dozen Plaintiffs and meeting and conferring over the same; (vi) preparing a detailed draft motion for class certification; (vii) retained and consulted with numerous experts; and (viii) exchanging detailed mediation statements and successfully mediating—on two separate occasions—a resolution of the Litigation with the assistance of an experienced mediator. *See generally* Joint Declaration of Co-Lead Class Counsel Stuart A. Davidson, Alexandra M. Honeycutt, and John A. Yanchanis in Support of Plaintiffs' (i) Unopposed Motion for Final Approval of Class Action Settlement, and (ii) Motion for an Award of Attorneys' Fees and Expenses ("Joint Decl."), filed contemporaneously herewith.

Co-Lead Class Counsel's fee award request is well in line with fee awards in this judicial district, in the Eleventh Circuit, and around the country in data breach and other complex class actions. *See, e.g.*, *Cabot E. Broward 2 LLC v. Cabot*, 2018 WL 5905415, at *4 (S.D. Fla. Nov. 9, 2018) (awarding a fee equal to one-third of the settlement fund, "consistent with what courts routinely award in class actions");[2] *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 2025 WL 457896, at *11-12 (S.D. Fla. Feb. 11, 2025) (data breach class action settlement awarding 33.33% of settlement fund for attorneys' fees); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 2024 WL 4415214, at *5 (S.D. Fla. Oct. 5, 2024) (data breach class action final approval order noting that district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common fund settlement); *In re Solara Med. Supplies Data Breach Litig.*, No. 3:19-cv-02284-H-KSC (S.D. Cal. Sep. 12 2022), ECF 150 (awarding fee equal to 45.45% of settlement fund); *In re Checking Acct. Overdraft Litig.*, 2020 WL 4586398, at *17 (S.D. Fla. Aug.

---

[2]   Unless otherwise noted, all emphasis is added and citations are omitted.

- 2 -

10, 2020) (awarding fee equal to 35% of the settlement fund), *aff'd*, 2022 WL 472057 (11th Cir. Feb. 16, 2022).

## II.      BACKGROUND

In 2023, ILS disclosed it experienced a Data Security Incident resulting in the potential exposure of sensitive and private information of approximately four million individuals. The information exposed in the Data Security Incident included highly sensitive personally identifiable information ("PII") such as their names, dates of birth, Social Security numbers, and protected health information ("PHI"). On March 17, 2023, the first class action lawsuit was filed against Defendant, following which several other actions were filed against Defendant in quick succession, each arising out of the Data Security Incident. On July 31, 2023, all related Civil Actions concerning the Data Security Incident were consolidated before the Honorable U.S. District Judge Kathleen M. Williams and U.S. Magistrate Judge Lisette M. Reid in the U.S. District Court for the Southern District of Florida under a single civil action number. On November 13, 2023, Plaintiffs filed a detailed, Consolidated Class Action Complaint ("Complaint") on behalf of thirteen Plaintiffs and a putative Nationwide Class. *See* ECF 44.

Defendant moved to dismiss the Complaint on December 13, 2023 (ECF 48), which Plaintiffs opposed. *See* ECF 53. On May 13, 2024, Defendant moved to stay discovery pending resolution of its motion to dismiss. *See* ECF 64. Plaintiffs opposed a stay of discovery (ECF 65), and the Court denied Defendant's motion on June 14, 2024. *See* ECF 67. Between April 2024 and September 2024, the Settling Parties engaged in significant discovery including, but not limited to, Plaintiffs serving Defendant with three sets of requests for production of documents and one set of interrogatories, Plaintiffs serving nine separate subpoenas on third-parties involved in

Defendant's data security or the Data Security Incident, and Defendant serving document requests and interrogatories on all Plaintiffs.

On November 6, 2024, and December 11, 2024, the Settling Parties engaged in mediation with an experienced mediator, Mr. Seth Aronson of Phillips ADR. Before that date, the Settling Parties exchanged and submitted detailed mediation briefs with their respective positions on the merits of their respective claims and defenses. The Settling Parties first mediated via Zoom Video Conference, and then later in person, during which they engaged in numerous arms' length, hard-fought negotiations with a considerable exchange of information between the Settling Parties and Mr. Aronson. The Settling Parties ultimately both accepted a mediator's proposal to settle this matter for $14 million.

On July 7, 2025, the Court issued an order adopting Judge Reid's report and recommendation and preliminarily approving the proposed Settlement with ILS. *See* ECF 96. Following the Court's preliminary approval order, the Settlement Class received the Court-approved Notice, which advised Settlement Class Members, among other things, of the amount of Co-Lead Class Counsel's anticipated fee and expense award request and their right to object to the same by October 6, 2025. *See* ECF 96 at 11-12. While this deadline has not yet passed, no objections have been received to this request to date.

## III.    LEGAL STANDARD

The Federal Rules of Civil Procedure provide that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained." *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330,

1358 (S.D. Fla. 2011) (citing *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

## IV.    ARGUMENT

Pursuant to the Settlement Agreement §10 (ECF 90-1, at 36), and the Settlement Notice (*id.* at 60), and consistent with recognized class action practice and procedure, Plaintiffs respectfully request an attorneys' fee award of $4,666,666.67 or one-third of the $14,000,000.00 Settlement Fund created by the Settlement. Plaintiffs and ILS never once discussed the amount of attorneys' fees and expenses Co-Lead Class Counsel may seek during their settlement negotiations, leaving ILS, like all Settlement Class Members, free to object should it so choose. The requested fee is reasonable under the factors listed in *Camden I*, 946 F.2d at 772, n.3, the controlling authority in the Eleventh Circuit regarding attorneys' fees. For the reasons detailed herein, Plaintiffs submit that the requested fee is appropriate, fair, and reasonable and respectfully request that it be approved by the Court.

### A.    Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Id.* at 771; *see also Van Gemert*, 444 U.S. at 478. The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *Gevaerts v. TD Bank, NA*, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015) (cleaned up). "The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are 'unjustly enriched' at the expense of the successful litigant." *Id*. (quoting *Van Gemert*, 444 U.S. at 478). As a result, the Supreme Court, the Eleventh Circuit,

- 5 -

and district courts in this circuit have all recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001).

In *Camden I*—the controlling authority regarding attorneys' fees—the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." 946 F.2d at 774; *see also Hamilton v. SunTrust Mortg. Inc.*, 2014 WL 5419507 (S.D. Fla. Oct. 24, 2014) (finding that attorneys representing a class action are entitled to an attorneys' fee award based upon the total benefits obtained in or provided by a class settlement); *Fortra*, 2025 WL 457896, at *11-12 (same).

The Court has discretion in determining the appropriate fee percentage. "'There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case.'" *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774). That said, courts within the Eleventh Circuit have noted that a fee request in complex class actions of "one-third of the settlement fund is . . . consistent with the trend in this Circuit." *Reyes v. AT&T Mobility Servs., LLC*, 2013 WL 12219252, at *3 (S.D. Fla. June 21, 2013) (collecting cases approving a one-third fee request); *see also, e.g., Kukorinis v. Walmart, Inc.*, 2024 WL 3226772, at *12 (M.D. Fla. June 28, 2024) (same); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1300 (11th Cir. 1999) (affirming fee award of 33 1/3% of the $40 million settlement fund); *Cabot*, 2018 WL 5905415, at *4 (finding an award of one-third of settlement fund to be "consistent with what courts routinely award in class actions");

*In re Citrix Data Breach Litig.*, 2021 WL 2410651, at *4 (S.D. Fla. June 11, 2021) (awarding a 32.9% fee); *Cravens v. Garda CL Se., Inc.*, No. 24-CV-80400-BER, slip op. at 20 (S.D. Fla. Sep. 11, 2025) (awarding a 33.33% fee); *Hanley v. Tampa Bay Sports & Ent. LLC*, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) ("district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund"); *Fortra*, 2025 WL 457896, at *11-12 (same); *Mednax*, 2024 WL 4415214, at *5 (same).[3]

Although "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case," the Eleventh Circuit recommends that district courts consider several factors to determine what constitutes a reasonable percentage award. *See Camden I*, 946 F.2d at 772-75 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). These factors include: (i) the time and labor required; (ii) the novelty and the difficulty of the questions involved; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of other employment by the attorney due to the acceptance of the case; (v) the customary fee; (vi) whether the fee is fixed or contingent; (vii) time limitations imposed by the client or the circumstances;[4] (viii) the amount involved and the results obtained; (ix) the experience, reputation, and ability of

---

[3]    *Accord Sawyer v. Intermex Wire Transfer, LLC*, 2020 WL 5259094, at *1 (S.D. Fla. Sep. 3, 2020) (awarding fee equal to one-third of the settlement fund); *McWhorter v. Ocwen Loan Servicing, LLC*, 2019 WL 9171207, at *14 (N.D. Ala. Aug. 1, 2019) (awarding 33% fee, and noting "The Court of Appeals and numerous district courts in this circuit have held that one-third of the fund represents a reasonable attorneys' fee, especially in contingency fee cases, such as this one."); *In re Flowers Foods, Inc. Sec. Litig.*, 2019 WL 6771749, at *1 (M.D. Ga. Dec. 11, 2019) (same); *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1257 (S.D. Fla. 2016) (recognizing that "a fee award of 33% . . . is consistent with attorneys' fees awards in federal class actions in this Circuit"); *In re Walter Energy, Inc. Sec. Litig.*, 2016 WL 7230505, at *1 (N.D. Ala. May 3, 2016) (awarding fee equal to 33% of the settlement fund).

[4]    This factor is not applicable to the circumstances of this case.

the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client;[5] and (xii) awards in similar cases. *Camden I*, 946 F.2d at 772 n.3.

"These twelve factors are guidelines; they are not exclusive." *Checking Acct.*, 2020 WL 4586398, at *17. "'Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action.'" *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). Courts in the Eleventh Circuit has encouraged the lower courts to consider "additional factors unique to the particular case." *Walco Invs., Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997). These factors support the requested fee.

### 1.     The Results Obtained Predominate

While listed as the eighth *Camden I* factor, Co-Lead Class Counsel discusses this factor first because, in determining an appropriate fee award, "'[the] monetary results achieved [in a particular case] ***predominate*** over all other criteria,'" making "the amount involved and results obtained . . . the 'most important factor' in determining an award of attorneys' fees." *Cabot*, 2018 WL 5905415, at *5 (alterations and emphasis original); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("[T]he most critical factor is the degree of success obtained.").

The Settlement primarily consists of a $14 million non-reversionary common fund, an outstanding result that represents a significant recovery for Settlement Class Members. Indeed, at the time of Settlement, ILS had little if any remaining insurance coverage, is a closely-held, private

---

[5]     This factor is not applicable to the circumstances of this case.

company, and there was a significant risk of nonpayment even if Plaintiffs were to ultimately prevail at trial. *See* Joint Decl. ¶35, filed concurrently herewith.

Given these and other significant litigation risks Co-Lead Class Counsel faced, the Settlement represents a successful result. Rather than facing years of costly and uncertain litigation, each Settlement Class Member is eligible to receive not only claims for reimbursement for out-of-pocket expenses up to $5,000.00, but also pro rata cash payments from the Settlement Fund. ECF 90-1 at 24-26. With regard to the monetary benefits provided to Settlement Class Members alone, this settlement compares very favorably to other recent data breach class action settlements. *See, e.g.*, *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR (S.D. Fla. Oct. 5, 2024), ECF 328 (Ruiz, J.) (approving $6 million settlement on behalf of 2,712,790 class members); *In re Lincare Holdings Inc. Data Breach Litig.*, No. 8:22-cv-1472-TPB-AAS (M.D. Fla. June 24, 2024), ECF 126 (finally approving $7,250,000 settlement on behalf of 2.9 million class members).

### 2. The Claims Against ILS Required Substantial Time and Labor

Prosecuting and settling these claims demanded considerable time and labor on a contingency fee basis, supporting the reasonableness of this fee request. Joint Decl. ¶¶13, 36. Co-Lead Class Counsel devoted substantial time to investigating the claims against ILS, determining how ILS obtained Class Members' PII and PHI, and litigating this matter. *Id.* Co-Lead Class Counsel also expended resources researching and developing the legal claims at issue, including responding to Defendant's motion to dismiss, motion to stay discovery, and preparing a motion for class certification pursuant to this Court's Scheduling Order. *Id.* Substantial time and resources were also dedicated to developing, serving, and reviewing the complaints filed in this matter,

4929-1757-9371.v1

engaging in discovery, as well as engaging in the above-mentioned motion practice with this Court. *Id.*

The mediation sessions held before Mr. Aronson required substantial preparation as well as discovery from ILS. *Id.* at ¶¶6-9, 13, 36. Following the initial mediation session, substantial time was devoted to evaluating potential avenues of resolution to which the Settling Parties could agree. *Id.* Subsequent settlement negotiations consumed time and resources. *Id*. Finally, significant time was devoted to negotiating and drafting the Settlement Agreement, addressing settlement administration issues, the language of the supporting documents such as the Notice, Claim Form, Settlement Website, the preliminary approval process, and to all actions required thereafter pursuant to the preliminary approval order. *Id.*

All of this time was spent without any assurance that the commitment of time and effort to this case would result in the payment of any fees. Co-Lead Class Counsel should be compensated for the substantial time and labor invested to obtain this outstanding settlement on behalf of the Class and for its persistence and efficiency in achieving the positive result for the Class.

### 3. The Novelty and Difficulty of the Questions Involved in This Litigation Required the Skill of Highly Trained Attorneys

"[P]rosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). This is particularly true for data breach litigation. *See, e.g.*, *In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2019 WL 3773737, at *6 (N.D. Ohio Aug. 12, 2019) ("The realm of data breach litigation is complex and largely undeveloped."); *Fulton-Green v. Accolade, Inc.*, 2019 WL 4677954, at *8 (E.D. Pa. Sep. 24, 2019) ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare."). To be sure, as the court in *In re TD*

- 10 -

*Ameritrade Account Holder Litigation* noted, "many [data breach class actions] have been dismissed at the pleading stage." 2011 WL 4079226, at *14 (N.D. Cal. Sep. 12, 2011).

ILS sought dismissal of Plaintiffs' claims at the pleading stage, and raised arguments challenging the Article III standing of the Plaintiffs and Class Members, which would have been fatal to this case had the Court accepted them. Although Plaintiffs believe they could rebut all of Defendants' arguments on liability and damages, obtain class certification, survive summary judgment, and prevail at trial, the issues between the parties required, and would continue to require, a tremendous amount of legal and factual expertise and would be resolved through a battle between experts, the outcome of which is notoriously uncertain. *See, e.g.*, *In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2023 WL 2284684, at *10 (S.D. Fla. Feb. 28, 2023), *vacated and remanded on other grounds by* 2024 WL 3065907 (11th Cir. June 20, 2024) ("[I]f litigation had continued there would have been a 'battle of experts' with an uncertain outcome."). Despite these significant risks and challenges, Co-Lead Counsel "was able to achieve substantial results in the most efficient manner possible without requiring protracted and extended litigation," thus, providing further support for their fee request. *See George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1383 (N.D. Ga. 2019) (noting the "'swift and successful conclusion supports an upward deviation from the benchmark'" and awarding a 33% fee).

Relatedly, in evaluating an attorneys' fee request, courts in this circuit consider the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one, including "the experience, reputation, and ability of the attorneys" involved. *Camden I*, 946 F.2d at 772 n.3; *see also Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *4 (N.D. Ga. Oct. 26, 2012) (awarding a fee of $25 million, or one-

third of the recovery, and finding "[t]he appropriate fee should also reflect the degree of experience, competence, and effort required by the litigation").

Here, the skills and resources required to prosecute this complex data breach class action were significant. Co-Lead Class Counsel come from some of the preeminent data breach class action litigation firms in the country, with decades of experience in prosecuting and trying complex class actions, including most of the largest privacy class actions filed to date. Joint Decl. ¶27 and Exhibits 1-18.[6] That experience and skill were demonstrated by the efficient and successful prosecution of this matter, culminating in the outstanding Settlement designed to address the typical repercussions suffered by consumers as a result of a data breach. *See Cabot*, 2018 WL 5905415, at *3 ("Class Counsel also has a well-deserved reputation for successfully trying complex cases to conclusion and defending those outcomes on appeal, a factor which likely played into the Defendants' decision to avoid a trial in this case."); *Checking Acct.*, 830 F. Supp. 2d at 1359 ("Class Counsel took on a great deal of risk in bringing this case, and turned a potentially empty well into a significant judgment. That kind of initiative and skill must be adequately compensated to insure that counsel of this caliber is available to undertake these kinds of risky but important cases in the future.").

The quality of opposing counsel is also important in evaluating the quality of services rendered by Class counsel. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1209 (S.D. Fla. 2006) ("'[I]n assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced.'") (alteration in original). This Litigation

---

[6]   Exhibits 1 through 18 comprise the Declarations of all plaintiffs' firms who represented one or more Settlement Class Representatives in this Litigation or who otherwise invested time and money in prosecuting this case at the express direction and with the approval of Co-Lead Class Counsel.

was defended by Morgan Lewis, the 12th largest law firm in the country, with 30 offices across the globe and approximately 2,000 lawyers. Morgan Lewis has a well-deserved reputation for vigorous advocacy in the defense of complex actions. Nevertheless, Co-Lead Class Counsel presented a strong case and demonstrated its willingness and ability to prosecute the matter through trial and the inevitable appeals, resulting in a highly favorable settlement for the Class. *See Checking Acct.*, 2020 WL 4586398, at *19 ("'Given the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results.'") (cleaned up). Co-Lead Class Counsel have successfully litigated and settled similar cases across the country and, in this case, have been challenged by highly experienced counsel who deployed very substantial resources on Defendant's behalf. Joint Decl. ¶¶12, 20, 27.

### 4. Class Counsel Assumed Considerable Risk to Pursue This Matter on a Pure Contingency Basis

In undertaking to prosecute this case on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. Joint Decl. ¶¶34-35. That risk warrants the requested fee. Indeed, "'[a] contingency fee arrangement often justifies an increase in the award of attorneys' fees.'" *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988)); *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of nonpayment); *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award"). As Judge King observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer . . . A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a

- 13 -

> class client given the investment of substantial time, effort, and money, especially
> in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548.

The risks of contingent litigation are highlighted by cases that have been lost after thousands of hours have been invested in successfully opposing motions to dismiss and pursuing discovery. *See, e.g.*, *George v. Duke Energy Ret. Cash Balance Plan*, 2011 WL 13218031, at *6 (D.S.C. May 16, 2011) ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs, yet have lost the case despite their advocacy."). For example, a change in law that occurs during the pendency of a class action can result—and has—in the dismissal of a case after the investment of significant time and resources. As a result of these and other developments, many cases are lost after thousands of hours have been invested in opposing motions to dismiss and pursuing discovery. *See, e.g.*, *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp.*, 77 F.4th 74 (2d Cir. 2023) (class decertified following more than 12 years of litigation and appellate and Supreme Court review, after plaintiffs' counsel, including Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), incurred nearly $7 million in expenses, and dedicated over 115,000 hours); *In re Vivendi Universal, S.A., Sec. Litig.*, 842 F. Supp. 2d 522 (S.D.N.Y. 2012) (granting judgment on the pleadings following change of law related to jurisdiction); *In re Williams Sec. Litig. - WCG Subclass*, 558 F.3d 1130, 1143 (10th Cir. 2009) (affirming grant of summary judgment for energy company following change of law).

Even plaintiffs who survive summary judgment and succeed at trial may find their judgment overturned on appeal or on a post-trial motion. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation by Robbins Geller due to error in jury instruction in light of subsequent change in law); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605 (S.D. Fla. Apr.

25, 2011) (granting defendants' judgment as a matter of law, overturning jury verdict and award in plaintiff's favor), *aff'd on other grounds sub nom*, *Hubbard v. BankAtlantic Bancorp, Inc*., 688 F.3d 713 (11th Cir. 2012); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed on appeal after almost seven years of litigation and judgment entered for defendant). A very real risk existed here that Class Counsel would invest substantial resources and receive nothing.

The progress of this case to date shows the inherent risk faced by Co-Lead Class Counsel in accepting and prosecuting this matter on a contingency fee basis. Despite Co-Lead Class Counsel's effort in litigating this case, they remain uncompensated for the time invested, in addition to the expenses they advanced. Joint Decl. ¶¶33, 35. There can be no dispute that this case entailed substantial risk of nonpayment for Co-Lead Class Counsel. As of September 22, 2025, Co-Lead Class Counsel and other plaintiffs' counsel have devoted approximately $2,880,813.70 in attorney time and incurred litigation expenses of at least $92,509.15, without the assurance that they would recover those expenses. Joint Decl. ¶¶31, 32.

**5.     The Requested Fee Comports with Fees Awarded in Similar Cases**

As noted above, an award of one-third of the Settlement Fund is the benchmark in this circuit.[7] Numerous decisions within District Courts in Florida and the Eleventh Circuit have found

---

[7]     *Waters*, 190 F.3d at 1292-98 (affirming fee award of 33 1/3 % of settlement of $40 million); *Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee . . . which is one-third of the settlement fund . . . is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases."); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sep. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Morefield v. NoteWorld, LLC*, 2012 WL 1355573 (S.D. Ga. Apr. 18, 2012) (awarding fees of 33 1/3% of the $1,040,000 settlement fund in addition to expenses); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011) (approving class settlement with one-third of the maximum $2,020,000 common fund);

- 15 -

a one-third fee is well within the range of reason under the factors listed by the court in *Camden I*. *See Wolff*, 2012 WL 5290155, at *5-6 ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (collecting case law from the Middle and Southern District of Florida awarding attorneys' fees comprising one third of common fund); *Fortra*, 2025 WL 457896, at *11-12 (same); *Mednax*, 2024 WL 4415214, at *5 (same).

Co-Lead Class Counsel's fee request not only falls within the benchmark percentage in class actions, but also below the range of the private marketplace, where contingency fee arrangements often approach or equal forty percent of any recovery. *See Continental*, 962 F.2d at 572 ("The object in awarding a reasonable attorney's fee . . . is to simulate the market."); *RJR Nabisco, Inc. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) ¶94, 268 (S.D.N.Y. 1992) ("[W]hat should govern [fee] awards is . . . what the market pays in similar cases"). And, "[i]n tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring). The requested one-third fee award here is appropriate and should be awarded.

### 6.     The Remaining *Camden I* and Other Factors Favor Approval

The remaining *Camden I* factors also support Co-Lead Class Counsels' fee request. The burdens of this litigation and the results obtained on behalf of Plaintiffs and the Class weigh in favor of the fee requested. The fee request is firmly rooted in "'the economics involved in prosecuting a class action.'" *Sunbeam*, 176 F. Supp. 2d at 1333. "[P]roper incentives must be

---

*In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-md-1317-PAS (S.D. Fla. Apr. 19, 2005), ECF 1557 at 8-10 (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis); *In re: Managed Care Litig. v. Aetna Inc.*, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement fund); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 95-cv-2152-ASG (S.D. Fla. May 30, 2003), ECF 626 at 7 (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees).

4929-1757-9371.v1

maintained to insure that attorneys of this caliber are available to take on cases of significant public importance like this one." *Checking Acct.*, 830 F. Supp. 2d at 1368.

The considerable amount of time spent prosecuting this case—over 3,526 collective hours—was time that Co-Lead Class Counsel and others could not devote to other matters. Moreover, Co-Lead Class Counsel and others expended this time and effort without any assurance that they would ever be compensated for their hard work. Accordingly, this factor also supports the requested fee. *See, e.g.*, *In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *11 (M.D. Fla. Mar. 23, 2021) ("'It is uncontroverted that the time spent on the [a]ction was time that could not be spent on other matters. This factor too supports the requested fee.'"); *Allapattah*, 454 F. Supp. 2d at 1209 ("[t]aking on this resource-sapping, risk-based venture" "necessarily had some adverse impact on the attorney's ability to accept other work").

In addition, the fact that the Settling Parties negotiated arduously and at length during mediation and numerous subsequent settlement sessions to finalize the Settlement, and that to date no class member has submitted a valid objection to the Settlement or its provision on attorneys' fees, weighs in favor of the fee requested. *See, e.g.*, *Allapattah*, 454 F. Supp. 2d at 1204 ("The lack of significant objection from the Class supports the reasonableness of the fee request.") (collecting cases); *Gevaerts v. TD Bank*, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015). The objection deadline is October 6, 2025. *See* ECF 96 at 15-16.

**B.** **Although Unnecessary, an Analysis of Lodestar Confirms the Reasonableness of the Requested Attorneys' Fees**

Under *Camden I*, use of the lodestar analysis is improper in common fund cases. *See Checking Acct.*, 830 F. Supp. 2d at 1362-63 (declining to perform lodestar cross-check because *Camden I* "mandated the exclusive use of the percentage approach in common fund cases" and noting that "courts in this Circuit regularly award fees . . . without discussing lodestar at all")

- 17 -

(cleaned up). Still, other courts have used lodestar as a "cross-check" to the percentage-of-the-fund analysis. *Waters*, 190 F.3d at 1298 ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison."); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1343 (S.D. Fla. 2007) (nothing that "[s]ome courts use the lodestar method as a cross-check of the percentage of the fund approach") (citing *Sunbeam*, 176 F. Supp. 2d at 1336).

To determine the lodestar amount, the "court must multiply the number of hours reasonably expended by a reasonable hourly rate." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "After the lodestar is determined . . . the court must next consider the necessity of an adjustment for results obtained." *Id.* at 1302. "If the results obtained were exceptional, then some enhancement of the lodestar might be called for." *Id.* (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), *supplemented*, 483 U.S. 711 (1987)).

The combined lodestar for all counsel who participated in the prosecution of this case on behalf of Plaintiffs is $2,880,813.70, representing a combined total of 3,536.40 hours.[8]

Of course, as this Court is aware, Co-Lead Class Counsel will continue to invest significant time in this matter through the settlement administration process, communicating with the settlement administrator and Settlement Class Members, preparing for and attending the hearing to obtain final approval, addressing any objections and defending the Court's final judgment

---

[8] *See* Exhibits 1-18 to the Joint Declaration.

against appeals (if any). Joint Decl. ¶36. That additional time will certainly bring the lodestar to an even higher amount. *Id.*

Accordingly, even under a lodestar analysis, the requested fee award is reasonable. *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *5 (N.D. Ga. Oct. 26, 2012) (applying a multiplier of four times lodestar to "reflect such considerations as (1) the contingent nature of the fee; (2) the risk of the case (i.e., the likelihood of success viewed at the time of the filing); (3) the quality of representation; and (4) the result achieved," and surveying cases applying multipliers of approximately four to nine times lodestar)).

Therefore, although not required in this circuit, it is clear from a lodestar cross-check that the requested attorneys' fees in this case are reasonable.

### C.     The Litigation Costs and Expenses Are Reasonable

Co-Lead Class Counsel seek an award of litigation costs and expenses totaling $92,509.15, as reflected in the respective declarations of Co-Lead Class Counsel and the other Plaintiffs' firms who assisted in the Litigation. *See* Joint Decl., Exhibits 1-18. In class action settlements, a trial court may award nontaxable costs that are authorized by law or the parties' agreement. *See* Fed. R. Civ. P. 23(h).

The categories of expenses for which Co-Lead Class Counsel seek an award here are the type that are necessarily incurred in litigation and routinely charged to hourly clients, and, therefore, should be paid out of the common fund. There has been no objection to these expenses.

For instance, Co-Lead Class Counsel was required to travel in connection with the case and thus, incurred the related costs of meals, lodging, and transportation. Further, counsel incurred the costs of computerized research. *See* Joint Decl. ¶¶5, 31. It is standard practice for attorneys to use these services to assist them in researching legal and factual issues. These charges are for

electronic research and data retrieval charges provided through vendors such as Courtlink, LexisNexis Products, PACER, and Westlaw. Other expenses that were necessarily incurred in the prosecution of this Litigation include mediation fees, document database hosting fees, photocopying, filing, and transcript expenses. Because these were all necessary expenses and charges incurred by counsel, they should be paid from the Settlement Fund. *See, e.g.*, *Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 2015 WL 5626414, at *1 (N.D. Ala. Sep. 14, 2015) (approving nearly $1.7 million in expenses); *In re U.S. Steel Consol. Cases*, 2023 WL 11997192, at *1 (W.D. Pa. Mar. 21, 2023) (approving award of $2.7 million in expenses at similar stage of litigation).

Here, an award of Co-Lead Counsels' expenses is authorized by the common fund doctrine. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970) (recognizing the right to reimbursement of expenses where a common fund has been produced or preserved for the benefit of a class). As detailed above, these litigation expenses were advanced without guarantee of repayment and benefited the Settlement Class. Accordingly, Co-Lead Counsel respectfully requests an award of costs and expenses of $92,509.15.

## V.      CONCLUSION

For the foregoing reasons, Co-Lead Counsel respectfully requests that the Court approve the requested award of attorneys' fees consisting of one-third of the Settlement Amount, $4,666,667.00, and litigation expenses of $92,509.15.

- 20 -

DATED:  September 22, 2025   Respectfully submitted,

         ROBBINS GELLER RUDMAN
           & DOWD LLP
         STUART A. DAVIDSON
         Florida Bar No. 0084824


            *s/ Stuart A. Davidson*
          STUART A. DAVIDSON

         225 NE Mizner Boulevard, Suite 720
         Boca Raton, FL  33432
         Telephone:  561/750-3000
         561/750-3364 (fax)
         sdavidson@rgrdlaw.com

         MORGAN & MORGAN
         JOHN A. YANCHUNIS
         Florida Bar No. 324681
         201 N. Franklin Street, 7th Floor
         Tampa, FL  33602
         Telephone:  813/223-5505
         jyanchunis@ForThePeople.com

         MILBERG COLEMAN BRYSON
         PHILLIPS GROSSMAN, PLLC
         ALEXANDRA M. HONEYCUTT *
         800 S. Gay Street, Suite 1100
         Knoxville, TN  37929
         Telephone:  866/252-0878
         ahoneycutt@milberg.com

         *Plaintiffs' Co-Lead Counsel*

         BILZIN SUMBERG
         MICHAEL A. HANZMAN
         Florida Bar No. 510637
         1450 Brickell Avenue, 23rd Floor
         Miami, FL  33131
         Telephone:  305/350-2424
         mhanzman@bilzin.com

         *Plaintiffs' Liaison Counsel*

- 21 -

NUSSBAUM LAW GROUP, P.C.
LINDA P. NUSSBAUM *
1211 Avenue of the Americas, 40th Floor
New York, NY  10036
Telephone:  917-438-9189
lnussbaum@nussbaumpc.com

GEORGE FELDMAN McDONALD, PLLC
BRITTANY L. BROWN
Florida Bar No. 105071
9897 Lake Worth Road, Suite 302
Lake Worth, FL  33467
Telephone:  561/232-6002
BBrown@4-justice.com

HAUSFELD LLP
STEVEN M. NATHAN *
888 16th Street N.W., Suite 300
Washington, DC  20006
Telephone:  202/540-7200
202/540 7201 (fax)
snathan@hausfeld.com

*Members of Plaintiffs' Executive Committee*

*Pro hac vice* granted